FAIN, APPELLANT, *v.*
HOPTRY, D.B.A. UNIVERSAL SIDING
APPLICATIONS, APPELLEE.

(No. 86AP-339—Decided
November 6, 1986.)

*Stephen E. Maher,* for appellant.
*Luper, Wolinetz, Sheriff & Neidenthal* and *Mark S. Miller,* for appellee.

McCormac, J. Marie G. Fain, plaintiff-appellant, commenced an action in the Franklin County Municipal Court, alleging that she and her husband, who has since quitclaimed his interest in the real property to her following a divorce, had entered into a written contract for the installation of vinyl siding on her house on April 1, 1981. She stated that she had lost her copy of the contract and that it was in defendant's possession. That explanation was made in compliance with Civ. R. 10(D). She stated that, on April 1, 1981, she had paid defendant a deposit of $2,000. She alleged that, subsequently, due to adverse financial circumstances, she was unable to complete the contract and had demanded the return of her $2,000 deposit. She stated that defendant had not performed any work on the residence and that he had refused to return the $2,000, for which she demanded judgment.

Defendant answered, denying any contractual liability for the return of the $2,000 deposit and alleging certain affirmative defenses, including the Statute of Frauds and the parol evidence rule.

Interrogatories were submitted to defendant and he answered them under oath. Defendant stated therein that his agreement with the Fains was that, if they "were unable to come up with the balance of the money, they would forfeit the $2,000 that they had put down as a down payment." He further stated that "it was clearly understood that in the event the plaintiffs failed to pay the balance of the contract price [$2,500] they would forfeit the $2,000 down payment." He also stated that the agreement was in writing.

About two months before trial, defendant was given leave to file an amended answer and counterclaim. In the amended answer, he admitted a contract in writing but denied that he had a copy of it, admitted that $2,000 was paid to him, admitted that plaintiff asked for the return of the $2,000 which he refused, and denied the remainder of the allegations of the complaint. He also asserted various affirmative defenses not in issue in this appeal. Defendant also counterclaimed, stating that there was an agreement that, if plaintiff did not go through with the contract, the $2,000 would be retained. He further stated that plaintiff breached the contract causing damages in lost profits in the amount of $2,370.80, of which $2,000 had been applied from the deposit. He sought judgment for the remaining $370.80.

No reply was filed to the counterclaim.

The case was tried to the court who rendered judgment in favor of defendant on plaintiff's complaint and granted judgment for defendant against plaintiff on his counterclaim in

the amount of $370.80, plus interest and costs.

Plaintiff has appealed, asserting the following assignments of error:

"1. The trial court erred in awarding lost profits where none of the work which was the subject matter of the contract had been commenced by the non-breaching party.

"2. The trial court erred in imposing a forfeiture against a party to an oral executory contract where the only evidence of the forfeiture provision came from the self-serving declaration of the party for whose benefit the alleged provision operated."

Marie Fain testified that defendant came to her house as a result of a recommendation from a friend in April 1981 (probably in reality April 1982) to sell vinyl siding to her husband and her. The Fains decided that they wanted to purchase the siding and defendant quoted $4,500 for the job and said it was a good deal. According to her, defendant said he wanted $2,000 down and the rest when the job was complete. He was given a certified check for $2,000. She said there was no conversation about forfeiture. Ultimately, because of a shortage of money, she and her husband were unable to complete the deal. In December 1983, she demanded return of her $2,000 and told defendant that they were unable to complete the deal. Defendant refused to return the $2,000. Plaintiff agreed that defendant had stopped by several times and that he wanted to complete the job. She did not see a written estimate, although she acknowledged that her husband might have seen it. She said that she expected her money back since defendant had not purchased any supplies nor done any work. She further stated that defendant told her that he would purchase the supplies and put them in her garage until she could put together the money to complete the job.

Plaintiff's daughter corroborated a few minor details of her mother's testimony.

Defendant sought a default judgment on the counterclaim which was denied by the trial court on the basis that testimony would have to be taken concerning damages.

Defendant was the sole witness for the defense. He stated that he had formed his business of Universal Siding Applications in January 1982 and that he had come to plaintiff's house in April 1982, at which time he had written out a formal estimate for materials and labor in installing vinyl siding on plaintiff's house. He stated that he could not find the written form that had been used. However, without objection, he submitted to the court and introduced as an exhibit a blank form that he stated was identical. In that form, one of the provisions was as follows:

"Acceptance by the contractor of requests for cancellation of this contract after the rescission period has expired will result in forfeiture of down payment or 1/3 of the contract price."

The form also contains in capital letters a notice of the buyer's right to cancel required by the Home Solicitation Sale Act contained in R.C. 1345.21 *et seq.*

Defendant testified that he did not require a down payment but that, in the fall of 1982, plaintiff provided him the $2,000 down payment in order to guarantee the $4,500 installation price because, at that time, plaintiff planned to pay for it with an income tax refund to be received in 1983. He stated that he told them that the deposit would be lost if they did not go through with the contract. He further stated that he did not agree to buy supplies and put them in plaintiff's garage. He stated that he was at all times ready, willing, and able to install the vinyl siding had he been given plaintiff's okay. He acknowl-

edged that, in December 1983, plaintiff called requesting the return of the deposit and that he refused, stating that it was not refundable. He further testified that his actual cost of completing the job in 1984 would have been $1,276.70 for materials and $852.50 for labor, for a total cost of $2,129.20. He stated that his profit would have been $2,370.80.

The trial court granted judgment to defendant on his counterclaim for $370.80.

The trial court erred in finding that no part of plaintiff's deposit was refundable. Defendant stated that his estimate was in writing on a form identical to that submitted into evidence. The previously quoted provision for cancellation of the contract after the rescission period is that there will be a forfeiture of the down payment or one-third of the contract price. The contract price was $4,500, one third of which would be $1,500. Since the contract is that of defendant's writing, any ambiguity in the language is to be construed against defendant. Therefore, the only reasonable construction of the language is that the forfeiture will be the lesser of the down payment or one third of the contract price. Since the down payment was $2,000, at least $500 of that amount must be returned to plaintiff.

As far as the counterclaim is concerned, it appears to be a counterclaim asserted in bad faith in violation of Civ. R. 11. There was clearly no basis for any argument that judgment was due defendant in excess of the down payment or one third of the contract price. At the time the amended answer containing the counterclaim was asserted, defendant had admitted in an interrogatory that the agreement was for forfeiture of the $2,000 down payment. Defendant had knowledge of the provisions of his contract which provided for forfeiture of the down pay-

ment or one third of the contract price. There was no basis whatsoever to assert that loss of profits in excess of this amount could be recovered. Thus, even though plaintiff failed to reply to the counterclaim, there was no basis to return any judgment on that claim.

Parenthetically, it should be noted that it is absolutely essential to defendant's being able to recover anything that there be proof that the purchasers had been provided a copy of the written form of which a blank form was introduced into evidence. The Home Solicitation Sale Act, R.C. 1345.21 *et seq.,* would not have been complied with without written notification of the right to cancel contained in that agreement. Upon remand, the trial court should ascertain whether this form was actually used and whether there was compliance with the Home Solicitation Sale Act. It is interesting to note that defendant stated that he keeps good written records but that he does not have a copy of that agreement. The trial court arguably found that there was no written agreement in order to return the judgment for lost profits since, had the agreement been considered, there was no possibility of that recovery.

Plaintiff's assignments of error are not accurately worded and are partially overruled and partially sustained.

The assignments of error are sustained to the extent that the judgment on the counterclaim is reversed. Final judgment on the counterclaim is to be rendered in favor of plaintiff. The judgment denying any relief to plaintiff is reversed on the basis that it is inconsistent with the evidence presented and that no version of the evidence supports complete denial of relief to plaintiff.

The judgment of the trial court is reversed and the case is remanded to the trial court for further procedure on

the complaint consistent with this opinion. The judgment on the counterclaim is reversed and the trial court is ordered to grant final judgment to plaintiff on the counterclaim.

*Judgment reversed and case remanded.*

WHITESIDE and ABELE, JJ., concur.

ABELE, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District.

WHITESIDE, J., concurring. Although I concur in the opinion and judgment, some additional observations are pertinent. First, defendant did not specifically testify that a written contract was entered into as required by R.C. 1345.23(A). Rather, he testified that he "wrote out a formal estimate for them," and gave it to plaintiff and her then husband. He did not testify that such estimate was ever signed either by him or by plaintiff or her then husband. He did identify a form as being identical to the one used to make the estimate.

In addition to the forfeiture provision referred to in the majority opinion, the form also states: "This contract shall become binding only upon written acceptance hereof by the Contractor or by an authorized agent of the Contractor; and; or upon commencement of the work." There is no evidence either of written acceptance or of commencement of work. The form further provides that it constitutes "the entire understanding of the parties" and that "no other understanding * * * VERBAL or OTHERWISE shall be binding unless in writing signed by both parties."

R.C. 1345.23(C) provides that the buyer may cancel any contract subject to its provisions until such time as the seller complies with R.C. 1345.23(A) and (B). Here, although there is evidence of a written estimate, there is no evidence of a contract signed by both parties as required by R.C. 1345.23(A).

Accordingly, I concur in the judgment.