GROSS

v.

BILDEX, INC.

Toledo Municipal Court, Ohio.

No. CVF–92–08561.

Decided Sept. 26, 1994.

*Eileen M. Sullivan,* for the plaintiff.

*John V. Kean,* for the defendant.

THOMAS J. OSOWIK, Judge.

The court finds that on May 5, 1992, the plaintiff, Weltha Gross, filed a complaint against the defendant, Bildex, Inc., alleging that the plaintiff and the defendant entered into a contract, which was amended on several occasions, for improvements to her home. The plaintiff further alleged that monies were deposited with the defendant and that the plaintiff timely exercised her right to rescind the contract. The plaintiff further alleges that as a result of the failure of the defendant to return the deposit, she is entitled to damages pursuant to R.C. 1345.09 *et seq.*

The plaintiff also alleged breach of contract and brought a claim for fraud and conversion.

In its answer, the defendant denied the allegations of the complaint and, further, presented a counterclaim, alleging that the plaintiff owes the defendant the sum of $5,310 as a result of breach of contract.

The case proceeded to trial with testimony taken and exhibits submitted.

The court finds that the plaintiff contacted the defendant after having seen an advertisement in the local newspaper, which presented the defendant's services. The plaintiff desired to have some substantial remodeling done to her home. On December 18, 1991, a sales representative of the defendant's met at the home of the plaintiff and the parties entered into an agreement to have certain improvements made to the plaintiff's home, for a contract price of $23,233. Payment terms were at successive stages: $300 down, with balance payable upon loan approval, concrete, rough/siding and completion. However, that contract left substantive terms so allusive as to invite confusion and, further, render that agreement unenforceable. The contract had no start date, no date when the loan application was to be made, and no date when approval was to be anticipated.

After several months elapsed and, apparently, after the plaintiff had indeed obtained loan approval, she approached the defendant about certain modifications to the December 18, 1991 proposal. At that point, all parties and testimony established that the December 18, 1991 agreement had been voided, by mutual consent.

The plaintiff and the defendant's sales representative met on February 27, 1992, at the plaintiff's home, and made modifications to the prior December 18, 1991 agreement. The February 27, 1992 agreement called for a start date of March 10, 1992. The February 27, 1992 contract also acknowledged the receipt of $300 from the prior contract and, further, receipt of an additional $5,000 from the plaintiff. The February 27, 1992 proposal, however, was substantially modified from the December 19, 1991 contract. These modifications included amendments to inside and outside dimensions as well as a complete deletion of the garage.

This court finds that the subject transaction is of the nature contemplated by the Home Solicitation Sales Act and defined in R.C. 1345.21. A home improvement contract is in the nature of a service contract, and the performance of services prior to expiration of "the time in which the buyer may cancel" is specifically prohibited by R.C. 1345.22, presumably, because there would be no possibility of return of the "services."

R.C. 1345.21(E) defines "consumer goods or services" as "goods or services purchased, leased, or rented primarily for personal, family, or household purposes * * *." It is only logical to conclude that goods and services utilized in remodeling or making additions or improvements to a family dwelling unit satisfy such purpose. In addition, R.C. 1345.21(F) lists certain goods or services which do not constitute "consumer goods or services," and nothing contained therein would exclude goods and services utilized in home improvements from the definition of "consumer goods or services."

This court, therefore, concludes that home improvement contracts such as the one under consideration herein may be a proper subject for a "home solicitation sale" as set forth in R.C. 1345.21(A). See, also, *Hooker v. Hilleker* (Jan. 10, 1983), Tuscarawas C.P. No. 82 CV 12447, unreported; *Brown v. Wells* (Dec. 27, 1982), Hamilton C.P. No. A–8208576, unreported; *Celebrezze v. Hall* (Apr. 26, 1983), Lucas C.P. No. 82–2664, unreported; *Fain v. Hoptry* (1986), 34 Ohio App.3d 148, 517 N.E.2d 550.

■ This court further concludes that the goods or services must be specifically identifiable at the time of the execution of the contract in order to constitute a "home solicitation sale." The subject contract does, in fact, specifically define the goods and services to be provided by Bildex.

Further, R.C. 1345.25 states as follows:

"Where a sale is made pursuant to negotiations that occur at a place other than the seller's fixed location business establishment where goods or services are offered or exhibited for sale, but the agreement or offer to purchase is signed at a seller's fixed location business establishment, a presumption arises that the sale was a home solicitation sale."

The February 27, 1992 negotiations and subsequent contract occurred at the plaintiff's home, obviously not at the defendant's fixed place of business, thereby creating a presumption of a "home solicitation" as defined in the statute.

The court, having found that the transaction between the plaintiff and the defendant is governed by R.C. Chapter 1345, further finds that the contract provided by the defendant must contain language required by R.C. 1345.23. That section states, in pertinent part:

"(A) Every home solicitation shall be evidenced by a written agreement or offer to purchase in the same language as that principally used in the oral sales presentation and shall contain the name and address of the seller. The seller shall present the writing to the buyer and obtain the buyer's signature to it. The writing shall state the date on which the buyer actually signs. The seller shall leave with the buyer a copy of the writing which has been signed by the seller and complies with division (B) of this section.

"(B) In connection with every home solicitation sale:

"(1) The following statement shall appear clearly and conspicuously on the copy of the contract left with the buyer in bold-face type of the minimum size of ten points, in substantially the following form and in immediate proximity to the space reserved in the contract for the signature of the buyer: 'You, the buyer, may cancel this transaction at any time prior to midnight of the third business

day after the date of this transaction. See the attached notice of cancellation for an explanation of this right.'

"(2) A completed form, in duplicate, captioned 'notice of cancellation', shall be attached to the contract signed by the buyer and be easily detachable, and shall contain in ten-point, boldface type, the following information and statements in the same language as that used in the contract:

"NOTICE OF CANCELLATION
"(enter date of transaction)

".............................
"(Date)

"You may cancel this transaction, without any penalty or obligation, within three business days from the above date.

"If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled. If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale; or you may if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

"If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

"To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice, or send a telegram, to (Name of seller), at (address of seller's place of business)

".................    ..................

"not later than midnight of .............
"(Date)
"I hereby cancel this transaction.

"..................
(Date)
"(Buyer's signature)

".........................

"(3) Before furnishing copies of the notice of cancellation to the buyer, the seller shall complete both copies by entering the name of the seller, the address

of the seller's place of business, the date of the transaction which is the date the buyer signed the contract and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation.

"(4) A home solicitation sales contract which contains the notice of buyer's right to cancel and notice of cancellation in the form and language provided in the federal trade commission's trade regulation rule providing a cooling-off period for door-to-door sales shall be deemed to comply with the requirements of divisions (B)(1), (2), and (3) of this section with respect to the form and language of such notices so long as the federal trade commission language provides at least equal information to the consumer concerning his right to cancel as is required by divisions (B)(1), (2), and (3) of this section.

"(C) Until the seller has complied with divisions (A) and (B) of this section the buyer may cancel the home solicitation sale by notifying the seller by mailing, delivering, or telegraphing written notice to the seller of his intention to cancel. The three day period prescribed by section 1345.22 of the Revised Code begins to run from the time the seller complies with divisions (A) and (B) of this section.

"(D) In connection with any home solicitation sale, no seller shall:

"(1) Include in any home solicitation sales contract, any confession of judgment or any waiver of any rights to which the buyer is entitled under this section, including specifically his right to cancel the sale in accordance with this section.

"(2) Fail to inform each buyer orally, at the time he signs the contract for the goods or services, of his right to cancel.

"(3) Misrepresent in any manner the buyer's right to cancel.

"(4) Fail or refuse to honor any valid notice of cancellation by a buyer and within ten business days after receipt of such notice to:

"(a) Refund all payments made under the contract or sale;

"(b) Return any goods or property traded in, in substantially as good condition as when received by the seller;

"(c) Cancel and return any note, negotiable instrument, or other evidence of indebtedness executed by the buyer in connection with the contract or sale and take any action necessary or appropriate to reflect the termination of any security interest or lien created under the sale or offer to purchase.

"(5) Negotiate, transfer, sell, or assign any note or other evidence of indebtedness to a finance company or other third party prior to midnight of the fifth business day following the day the contract for the goods or services was signed.

"(6) Fail to notify the buyer, within ten business days of receipt of the buyer's notice of cancellation, whether the seller intends to repossess or abandon any shipped or delivered goods."

■ The undisputed testimony shows that at the time the February 27, 1992 contract was negotiated and executed at the plaintiff's home, the defendant did not deliver to the plaintiff the statutorily required notice of cancellation, pursuant to R.C. 1345.23(B)(2). The requirements of this code section are mandatory. A completed form, captioned "Notice of Cancellation," must be attached to the contract that is left with the buyer. Undisputed testimony establishes that two days later, the defendant's sales representative returned to the plaintiff's house and left her a form captioned "Notice of Right of Rescission."

While the "Notice of Right of Rescission" which Bildex delivered to plaintiff may have met the federal "Truth-in-Lending" standard, the "Truth-in-Lending" notice is substantially different from the notice of cancellation required here.

The court finds several material differences. For example, Bildex's notice of right of rescission advises the buyers of possible liens, while the required notice of cancellation makes no mention of liens. Bildex's notice gives three optional dates by which the buyers may cancel, one of which is predicated on their receipt of "Truth-in-Lending" disclosures, which the court must assume they would not receive in this subject transaction. By contrast, the notice of cancellation required by Ohio law gives the buyers three days from a specific date to cancel the transaction. Further, Bildex's notice requires that the sellers cancel any lien, mortgage or other security interest and return any money or property received within twenty days of cancellation. Again, in contrast, the notice of cancellation requires that any negotiable instrument executed by the buyer must be returned within ten days. Finally, Bildex's notice indicates that the buyers may retain any property received until the seller complies with its obligations, while the notice of cancellation requires the buyer to make the goods available to the seller.

Based on these differences and others which may affect buyers' understanding of their rights and obligations, as well as sellers' obligations, the court finds that the notice provided by Bildex does not satisfy the requirements of R.C. 1345.23. Further, since the court has found that material differences exist between the two notices, it follows that the "Notice of Right of Rescission" did not constitute substantial compliance with R.C. 1345.23.

■ The court finds that the statute does not provide for substantial compliance, but unequivocally sets forth certain information which must be included and, in fact, provides the seller with the entire form which the seller may utilize to avoid any question of compliance. See *Brown v. Deacon's Chrysler Plymouth, Inc.* (App.1979), 14 O.O.3d 436.

The court therefore determines that the subject transaction constituted a "home solicitation sale" and that the seller failed to provide the appropriate notice of cancellation as required by law and in the manner as provided by law.

R.C. 1345.23(C) provides that "[u]ntil the seller has complied with divisions (A) and (B) of this section the buyer may cancel the home solicitation sale by notifying the seller by mailing, delivering, or telegraphing written notice tó the seller of his intention to cancel. The three day period prescribed by section 1345.22 of the Revised Code begins to run from the time the seller complies with divisions (A) and (B) of this section."

■ A home improvement contract such as the one at issue here is primarily a contract for services. Since Bildex failed to provide plaintiff with adequate notice of cancellation, plaintiff's right to cancel never expired and that option was still available to her when, by the defendant's own admission, she delivered the "Right of Rescission" form supplied by the defendant to its place of business on March 3, 1992.

■ Further, having violated the prohibition of R.C. 1345.22 by commencing performance prior to delivery of a notice of cancellation, Bildex cannot now be heard to complain of an unjust consequence in seeking damages on its counter-claim. To hold otherwise would permit the seller to avoid the purpose of the Act entirely. See *Edgell v. Aurora Builders, Inc.* (Dec. 12, 1985), Cuyahoga App. No. 49827, unreported, 1985 WL 4344.

Thus, the court finds the defendant's counterclaim not to be well taken, and judgment shall be granted in favor of the plaintiff.

■ Further, the court finds that Bildex's failure to provide a notice of cancellation pursuant to R.C. 1345.23 and Bildex's commencing of performance in violation of the prohibition contained in R.C. 1345.22, as well as its retention of the plaintiff's security deposit, constitute "a deceptive act or practice in connection with a consumer transaction" in violation of R.C. 1345.28 and 1345.02.

Since the defendant's culpability under R.C. 1345.02(A) and 1345.03(A) has been settled, all that remains is the question of damages. The plaintiff seeks treble damages under R.C. 1345.09(B). The prerequisites for treble damages are clearly stated in *Sinkfield v. Strong* (1987), 34 Ohio Misc.2d 19, 21, 517 N.E.2d 1051, 1053. R.C. 1345.09(B) provides that a plaintiff is entitled to treble damages if it can be shown that (1) the act or practice complained of has been determined by a court of this state to violate R.C. 1345.02 or 1345.03; and (2) the act or practice was committed after the decision containing the determination was made available for public inspection by the Attorney General pursuant to R.C. 345.05(A)(3).

The prerequisites have been met in that the case of *Brown v. Lyons* (1974), 43 Ohio Misc. 14, 72 O.O.2d 216, 332 N.E.2d 380, held that a supplier who accepts monies from consumers and then allows an unreasonable length of time to elapse without making full refund commits a deceptive act in violation of the Ohio Consumer Sales Practices Act, R.C. 1345.02(A). According to the court in *Daniels v. True* (1988), 47 Ohio Misc.2d 8, 547 N.E.2d 425, the decision in *Brown, supra,* was made part of the public inspection file of the Attorney General's Office under R.C. 1345.05(A)(3) prior to 1979. *Mihailoff v. Ionna* (May 6, 1987), Hamilton App. No. C–860040, unreported, 1987 WL 10889. Further, the court in *Hines v. Thermal–Gard of Ohio, Inc.* (1988), 46 Ohio Misc.2d 11, 546 N.E.2d 487, held that failure to provide a consumer with "Notice of Cancellation" in compliance with the Ohio Revised Code was a deceptive practice. The *Brown, True* and *Hines* cases should have given defendant fair warning in advance about deceptive and unconscionable practices that may lead to treble damages.

As to the issue of attorney fees, R.C. 1345.09(F)(2) limits recovery of attorney fees to those situations where the supplier has "knowingly" committed an act or practice that violates the Consumer Sales Practices Act. The court finds that the defendant was actually aware that its actions were unlawful and it knowingly committed acts which have been determined to violate the Consumer Sales Practices Act.

Pursuant to R.C. 1345.09(B) and 1345.09(F)(2), the court grants treble damages and reasonable attorney fees for the defendant's deceptive and unconscionable acts in violation of R.C. 1345.02(A) and 1345.03(A) of the Consumer Sales Practices Act.

IT IS THEREFORE ORDERED THAT JUDGMENT WILL BE GRANTED IN FAVOR OF THE PLAINTIFF AGAINST THE DEFENDANT IN AN AGGREGATE AMOUNT OF $10,000, which amount meets that statutory monetary jurisdictional limit of the court. This amount shall include damages and attorney fees, plus court costs and interest at the statutory rate of ten percent per annum from date of judgment herein.

IT IS FURTHER ORDERED THAT JUDGMENT BE AWARDED IN PLAINTIFF'S FAVOR ON THE DEFENDANT'S COUNTERCLAIM.

The court further finds that this order is a final determination of all of the issues of all the parties before the court, pursuant to R.C. 2505.02.

Thus, this is a final and appealable order. The clerk shall so journalize this judgment on her records and, further, note the date of such journalization, the date of which shall commence the time for appellate review and, further, notify all parties of this judgment.

*So ordered.*