[Cite as *Santos v. Buckeye 5, L.L.C.*, 2023-Ohio-3602.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

EUGENE SANTOS,

Plaintiff-Appellant,

v.

BUCKEYE 5, LLC,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0117**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2020 CV 01331

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. John N. Zomoida, Jr.*, Anthony & Zomoida, LLC, 40 South Main Street, Poland, Ohio 44514 for Plaintiff-Appellant and

*Atty. Charles E. Dunlap*, 7330 Market Street, Youngstown, Ohio 44512 for Defendant-Appellee.

Dated: September 28, 2023

**Robb, J.**

**{¶1}** Appellant, Eugene Santos, appeals the October 13, 2022 judgment issued after both parties filed objections to the magistrate's decision. The trial court adopted the magistrate's decision in part and disagreed in part. It agreed Appellee, Buckeye 5, LLC, violated the Home Solicitation Sales Act (HSSA) but found the magistrate's award of damages in favor of Appellant was not supported by sufficient evidence.

**{¶2}** Appellant argues on appeal the trial court erred as a matter of law by finding a violation of the HSSA but not awarding him a refund of all money he paid Appellee pursuant to their agreement. For the following reasons, we affirm.

<u>Statement of the Facts and Case</u>

**{¶3}** Appellant filed his complaint in August of 2020 against Appellee, alleging the parties entered into an agreement by which Appellee was to perform renovations on Appellant's home. (August 13, 2020 Complaint.)

**{¶4}** Appellant claims Appellee provided him with two estimates in June and July of 2018 in the amounts of $6,971.25 and $37,795.54. After Appellee began the renovations, the parties had a disagreement. Appellant subsequently emailed Appellee in February of 2019 and sought to end the parties' agreement. Appellant alleges he paid Appellee a total of $48,219.92, yet Appellee claimed it is still owed $6,908. Appellee filed a mechanic's lien against the property in May of 2019 for this amount. A copy of the lien affidavit is attached to the complaint. (August 13, 2020 Complaint, Exhibit B.)

**{¶5}** Appellant's sole cause of action alleges a violation of the HSSA and Consumer Sales Practice Act (CSPA) based on Appellee's failure to provide notice of the three-day right to cancel in violation of R.C. 1345.23(B)(2). Appellant claims this constitutes a deceptive act under the HSSA. He also contends he effectively canceled the parties' agreement via an email sent to Appellee's attorney on February 3, 2020, and as a result of this cancellation, Appellant has a statutory right to have all money paid to Appellee returned to him. Appellant's demand for relief seeks repayment of the $48,219.92 paid, a release of the mechanic's lien, costs, attorney's fees, and any other relief he is entitled under law. (August 13, 2020 Complaint, Exhibit B.) Appellant did not assert claims for negligent workmanship or breach of contract.

<u>Case No. 22 MA 0117</u>

**{¶6}** In its answer, Appellee admitted it was paid $48,219.92 for services related to Appellant's home and contended Appellant owed Appellee an additional $6,908. (October 19, 2020 Answer.) The parties agreed to have the matter heard by the court's magistrate. (March 11, 2021 Consent to Magistrate.)

**{¶7}** Appellant moved for summary judgment in his favor. In Appellee's verified opposition, he argued genuine issues of fact remained for the trier of fact. Appellee asserted the parties did not have a master contract, "only a series of invoices evidencing work that had been completed." Appellee also claimed Appellant's lawsuit under the HSSA was attempting to use the Act as a sword instead of a shield. Appellee alleged Appellant had sued his prior contractor for violations of the HSSA and Appellant had shown Appellee's estimates (that did not contain the right to cancel) to his attorney *before* Appellant hired Appellee. Appellee attached an email he received from Appellant in which Appellant states he showed Appellee's estimate to his lawyer, "and he is OK with it." Thus, Appellee urged the court to find Appellant was not entitled to any relief. (September 7, 2021 Defendant's Verified Response.)

**{¶8}** The trial court overruled Appellant's motion for summary judgment. (September 23, 2021 Judgment Entry.) The bench trial to the magistrate was held November 17, 2021.

**{¶9}** In advance of trial, Appellant filed a pretrial statement outlining the issues of law and facts to be heard. He argued against the trial court's employing the shield/sword dichotomy. He argued this was not part of the governing statute and was instead judges legislating from the bench. Appellant also urged the court to find that because the statute does not provide a "substantial performance" exception, Appellee is not entitled to a set off for work performed or a claim for unjust enrichment. (November 14, 2021 Pretrial Statement.)

**{¶10}** The bench trial to the magistrate was held November 17, 2021. Allen Holtzman, the sole owner of Buckeye 5, LLC, testified first on cross-examination. Holtzman confirmed Appellant contacted him to secure estimates for remodeling work to his home. Appellant "had issues" with the entire house. When Holtzman arrived, there were holes in the walls, "stuff half finished," and "tarp[s] over the windows." Appellant obtained his name through the Better Business Bureau. It took longer than normal to

Case No. 22 MA 0117

prepare Appellant's estimate due to the large size of the project. (Tr. 13-14.) Plaintiff's Exhibit 1 is Appellee's first estimate dated June 30, 2018 for electrical work totaling $6,971.25. Plaintiff's Exhibit 2 is the second estimate Appellee provided to Appellant dated July 1, 2018 in the amount of $37,795.54. It encompasses a new roof, reinstallation of gutters, and work in the kitchen, full bathroom, half bathroom, and foyer. The third estimate dated July 2, 2018 is marked as Plaintiff's Exhibit 3, and it appears to duplicate the work and price detailed in Plaintiff's Exhibit 2. Appellee agreed that none of the estimates included a notice of Appellant's three-day right to cancel. (Tr. 22.) Appellee also agreed that Appellant paid him a total of $48,219.92. (Tr. 22-23.)

{¶11} After commencing the work outlined in the estimates, Appellant asked Appellee to perform more work at his home in excess of what was outlined in the initial estimates. (Tr. 24-25.) Appellant's counsel also asked Holtzman the following questions:

Q * * * Did you actually perform or do all of the work that is in those – all of those estimates?

A To the best of my knowledge, there was email communication of things that were still needed, but once communication slowed down or basically stopped, the work stopped. I couldn't work without any more money.

Q And there came a time that you filed a mechanic's lien on Mr. Santos' house, correct?

A Correct.

Q What was that for?

A The additional money owed.

Q On top of the 48,000?

A Correct.

Q Roughly 48,000 that he paid you already?

A Correct.

(Tr. 24-25.) Appellee's attorney stipulated that he received Plaintiff's Exhibit 23, Appellant's notice of cancellation on February 3, 2020.

{¶12} Appellant Eugene Santos testified on direct that he has been the owner of the home in Austintown, Ohio since 1975. Santos agreed he hired Appellee to perform work on his home as the second contractor. Santos had to sue the first contractor he

Case No. 22 MA 0117

hired, and the case settled. During the first contractor's work, Eugene and his wife could not live in the home because all of the remodeling that was occurring. (Tr. 32-34.)

{¶13} On cross-examination, Appellant agreed he sued his first contractor for violations of the CSPA, and the case settled for approximately $15,000. Appellant said his first contractor did not finish the work and refused to finish it. Appellant said at this point, his home was "[p]retty bad, *but still livable * * * for one or two nights.*" (Emphasis added.) Before Appellee was hired and after the first contractor left the work undone, Appellant then said it was "*just unlivable*, because a lot of things [were] not done, like the kitchen. It was not completely done * * * and the cabinet, I don't think it was – I'm afraid to use it because it might fall down." (Emphasis added.) (Tr. 36-38.) Appellant was also asked whether he had complaints about Appellee's work:

Q  * * * Do you have any complaints with the work that he did?

A  Oh, yeah, a lot.

Q  What are those complaints?

A  He shouldn't have tor[n] down everything without putting it back.

Q  Okay. Do you have any pictures? Do you have any estimates? Do you have any evidence of that happening? Today.

A  Not today.

* * *

Q  Do you have any complaints about the quality of his work?

A  Certainly.

Q  Okay. What are those complaints?

A  Like I say, he simply tore * * * things out that [the prior contractor] put in, like the floor, the toilet and the kitchen. He tore it off without putting it back.

Q  Now, the things you just said, that's what you contracted him to do; isn't that correct?

A.  Yeah, but I expect it to be done, not just tore it [out].

* * *

Q  So your testimony today is that he took out the sink, the toilet and the floor, and did not replace them?

A  That's part of it

\* \* \*

Q  So as you sit here today, you have no evidence that - - any pictures, any expert testimony, any documents that he didn't do this work properly?

A  \* \* \*  I don't have it with me today.

Q  \* \* \* does it exist?

A  I think it does, but I don't know.

(Tr. 38-42.)

{¶14} Thereafter, Appellant's counsel stipulated Appellant showed him one of Appellee's estimates for the work on the home *before* Appellant retained Appellee and before the work was commenced.  Appellant told Appellee via email that his lawyer said the estimate was "okay."  Sometime thereafter, Appellee started the work.  (Tr. 44-47.)

{¶15} Appellee's mechanic's lien affidavit was filed May 13, 2019.  It indicates Appellee is owed $6,908 for labor and work performed at Appellant's residence.  Thereafter, in February of 2020, Appellant had his lawyer email Appellee that he was canceling the parties' contract and Appellee had failed to advise him about the three-day right to cancel.  (Tr. 48-49; Plaintiff's Exhibit 23.)

{¶16} Holtzman then testified on direct examination.  When asked about the condition of the home before he was hired, Holtzman said upon entering the residence, he observed:

The first thing I noticed [were] holes throughout the walls and ceilings. Anywhere there was any light fixture, outlet, switch, any electrical device, there was a hole next to it.  The floors were torn up.  Again, there was a blue tarp over the front windows.  Gutter was half hanging off in the back. Kitchen was in disarray.  Half the cabinets were broken and in the basement.  The other half were sitting there with a section of countertop just set on top.  They weren't attached.  The cabinets were not attached.  \* \* \* I took notes of the materials he had, flooring he had stacked up in his garage. Some of it was used \* \* \*.  It was just a mess.  Everywhere there was dust. It was not livable.

(Tr. 54-55.) When Holtzman asked what happened, Appellant complained about his prior contractor and said he had taken a "large deposit, created all the damage that we saw, and left." (Tr. 55.) Based on his observations, Appellee created three estimates. Appellee testified that he completed the work contained in his three estimates, Exhibits 1, 2, and 3. (Tr. 55-56.)

{¶17} Appellee said he installed a new roof, new bathroom tile, and said the upstairs toilet and shower are fully operable. Appellee explained he could not finish certain things, like installing the kitchen cabinets because some of them were inoperable and new ones needed to be purchased, but there was a lack of communication. (Tr. 56-57.) He explained the parties agreed Appellee would be paid via progress payments for work completed to avoid a large upfront deposit. He said he would show Appellant the completed work via FaceTime or photographs.

{¶18} Appellee testified he completed $48,000 worth of work, and Appellant did not complain about the quality of his work until now. (Tr. 57.) Appellee said he stopped working because Appellant stopped communicating with him and stopped purchasing the necessary materials. Appellee said he did not agree to pay for Appellant's materials. (Tr. 58-59.)

{¶19} After trial, the magistrate issued his decision finding a violation of the HSSA. He found it was undisputed that Appellee's three estimates did not contain notice of the three-day right to cancel. He also found the HSSA was applicable and Appellant elected to cancel the contract as his sole remedy. The magistrate also concluded: "Defendant undeniably performed some work on the Property, but it did not complete all of the work." It also found Appellant had paid "$48,219.92 to the Defendant for the work performed by Defendant on the Property." (April 29, 2022 Magistrate's Decision.)

{¶20} The magistrate also concluded: "On May 13, 2019, Defendant filed a mechanic's lien against the Property in the amount of $6,908.00 that Defendant claims is still owed by Mr. Santos for work performed by Defendant on the Property." More than eight months later, "[o]n February 3, 2020, Mr. Santos' counsel sent Defendant's counsel a letter giving notice of Mr. Santos' desire to cancel any and all contracts with Defendant and requested a refund of all monies paid by Mr. Santos * * * based upon Buckeye's

failure to comply with the HSSA by not including language in the documents * * * that plaintiff has 3 days to cancel." (April 29, 2022 Magistrate's Decision.)

{¶21} In his findings of fact, the magistrate also concluded Appellant's prior home contractor had left his home in a state of disrepair. He also found Appellant had filed suit against this prior contractor, including an alleged violation of the CSPA, and the case settled. The magistrate also noted, "Plaintiff testified that he did not possess any evidence that Buckeye's work was substandard." (April 29, 2022 Magistrate's Decision.)

{¶22} Under his findings of law section, the magistrate relied on statutes and caselaw and indicated Appellant had the right to return of the full amount paid to Appellee in light of the lack of three-day right to cancel notices. However, the magistrate adopted the logic of the 11th District Court of Appeals and found the HSSA is not designed to be a sword, and "[i]n such a situation, the trial court would certainly have the discretion to make an equitable determination of damages." *Kamposek v. Johnson*, 11th Dist. Lake No. 2003-L-124, 2005-Ohio-344, ¶ 33. The magistrate also relied on *White v. Allstate Ins. Co.*, 8th Dist. Cuyahoga No. 92648, 2009-Ohio-5829, for this proposition, and pursuant to these cases, awarded Appellant damages in the amount of $6,908 to be credited against the mechanic's lien amount owed to Appellee, resulting in a zero balance. The magistrate also ordered Appellee to withdraw the mechanic's lien filed against Appellant's property. (April 29, 2022 Magistrate's Decision.)

{¶23} Both parties objected to the magistrate's decision. Appellant claimed the magistrate's decision *not* ordering a return of all money paid by him to Appellee was an error of law. (July 17, 2022 Plaintiff's Objections.)

{¶24} Appellee also objected. He urged the court to find the magistrate erred by awarding Appellant $6,908 in damages. Appellee alleged because Appellant elected to cancel the contract, he was not entitled to damages. (September 1, 2022 Defendant's Objections.)

{¶25} In response to the objections, the trial court adopted the decision in part and rejected it in part. The trial court found a violation of the HSSA based on the lack of notice of the three-day right to cancel. The court also agreed that Appellant effectively canceled their agreement on February 3, 2020. It also found: "the Court agrees with the finding of the Magistrate that Plaintiff wielded the HSSA as a sword to recoup funds he paid for

Case No. 22 MA 0117

services and supplies that he bargained for and received. Therefore, the Court adopts the Magistrate's equitable determination of damages and awards Plaintiff $0." (October 13, 2022 Judgment.)

{¶26} Regarding the award of damages and cancellation of the mechanic's lien, the trial court held:

> [T]here was not sufficient evidence presented for the Magistrate to make such a finding. The testimony and evidence established that the initial estimates agreed upon by the parties totaled $44,766.79. Plaintiff paid a total of $48,219,92 or $3,453.13 above the original contract price. Defendant recorded a mechanic's lien that included a claim that Plaintiff owes an additional $6,908.00. Defendant testified that after the commencement of the project, the parties agreed to work in addition to what was contemplated in the original estimates and Plaintiff presented testimony that certain work was not completed. There was no evidence presented as to what additional work was agreed upon, the value of work and what, if any, was completed. Additionally, there was not sufficient evidence presented for the Court to determine what work was and was not completed as related to the original estimates. Thus, the Court is without sufficient information to make a finding as to any balance that may still be owed or overpaid, nor is the issue properly before the Court.
>
> Therefore, the Court strikes the portion of the Magistrate's Decision that awarded Plaintiff damages in the amount of $6,908.00 and the cancellation of the mechanic's lien.

(October 13, 2022 Judgment.)

{¶27} Appellant raises one assignment of error.

Assignment of Error: HSSA Cancellation & Refund After Performance

{¶28} Appellant's sole assignment of error contends:

"The trial court erred by awarding Mr. Santos his damages in the amount of zero dollars despite finding the Appellee violated the Home Solicitation Sales Act by not notifying Mr. Santos of his right to cancel the transaction within three business days."

**{¶29}** Appellant contends the trial court erred as a matter of law. He claims because Appellee failed to provide the mandated three-day notice to cancel the transaction and Appellant effectively canceled the parties' contract, Appellee was statutorily required to refund Appellant all money paid pursuant to R.C. 1345.23(D)(4)(a). Appellant claims the trial court erred by failing to follow the statute. He also claims it erred by adopting and applying Appellee's sword/shield argument to reach an equitable resolution.

**{¶30}** Appellant does not challenge the court's factual findings. There is no dispute that the parties' agreement was a consumer transaction covered by the HSSA and CSPA. It is likewise evident Appellee's estimates did not contain the statutorily required notice advising about Appellant's right to cancel. Thus, there was a violation of R.C. 1345.23. The issues and arguments here are solely about remedies and statutory interpretation.

**{¶31}** *"A question of statutory construction presents an issue of law that we determine de novo on appeal." Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, 982 N.E.2d 636, ¶ 12. We review the statute to determine if its meaning is clear, and if the legislature's intent is evident, we must give effect to the unambiguously expressed intent. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-843, 104 S.Ct. 2778 (1984). "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

**{¶32}** Absent an ambiguity, "we will apply the statute as written and conduct no further investigation." *State v. Hurd*, 89 Ohio St.3d 616, 2000-Ohio-2, 734 N.E.2d 365, citing *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584, 651 N.E.2d 995 (1995).

**{¶33}** The Consumer Sales Practices Act is a remedial law designed to provide remedies for consumers, and it should be liberally construed pursuant to R.C. 1.11, which states in part, "[r]emedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice." *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990).

**{¶34}** "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42.

**{¶35}** "'Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 212, 519 N.E.2d 1380 (1988). "In enacting a statute, it is presumed * * * [t]he entire statute is intended to be effective[, and a] just and reasonable result is intended * * *." R.C. 1.47(B) and (C).

**{¶36}** As stated, Appellant claims a plain reading of the statute dictates Appellee must return all money he received from Appellant in light of the violation of the notice requirement and Appellant's effective cancellation.

**{¶37}** We begin and end our analysis with the applicable statutory language and pay particular attention to the terms employed and their meanings, consistent with R.C. 1.42., to avoid repeating the apparent misconstruction of these provisions recited by other courts.

**{¶38}** "All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict." *West v. Bode*, 7th Dist. Monroe No. 18 MO 0017, 2019-Ohio-4092, 145 N.E.3d 1190, ¶ 45, *aff'd,* 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298, quoting *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357.

**{¶39}** Ohio's Home Solicitation Sales Act is codified in R.C. 1345.21. It is a subdivision of Ohio's Consumer Sales Practice Act. R.C. 1345.23 requires a specific, written three-day notice to the buyer alerting the buyer of the right to cancel. If the notice is not provided, the buyer's right to cancel the parties' agreement continues until he or she is provided the requisite notice in accordance with the statute. The right to cancel

continues to run and allows the buyer to cancel at any time, until three days after notice is given.

**{¶40}** R.C. 1345.23 states in part:

(C) Until the seller has complied with divisions (A) and (B) of this section the buyer may cancel the home solicitation sale by delivering to the seller by certified mail, return receipt requested, personal or manual delivery, facsimile transmission, or electronic mail, written notice to the seller of the buyer's intention to cancel. The three-day period prescribed by section 1345.22 of the Revised Code begins to run from the time the seller complies with divisions (A) and (B) of this section.

(D) In connection with any home solicitation sale, *no seller shall*:

* * *

(4) *Fail or refuse to honor any valid notice of cancellation* by a buyer and within ten business days after receipt of such notice to:

(a) *Refund all payments made under the contract or sale * * *.*

(Emphasis added.)

**{¶41}** R.C. 1345.28 states: "Failure to comply with sections 1345.21 to 1345.27 of the Revised Code constitutes a deceptive act or practice in connection with a consumer transaction *in violation of section 1345.02 of the Revised Code*." (Emphasis added.) And R.C. 1345.09 details a consumer's cause of action for a "deceptive act" in violation of Chapter 1345. R.C. 1345.09, which defines the relief available under the Consumer Sales Practices Act, allows the consumer to sue for rescission, damages, attorney's fees, injunction, or declaratory judgment. It states in part:

For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

(A) Where the violation was an act prohibited by section 1345.02 [*a deceptive act like here*], 1345.03, or 1345.031 of the Revised Code, *the consumer may, in an individual action*, rescind the transaction <u>or</u> *recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages.*

(B) Where the violation was * * * an act or practice determined by a court of this state to violate section 1345.02 * * * of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code*,* the consumer may rescind the transaction or recover, but not in a class action*,* three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

(C)(1) Except as otherwise provided in division (C)(2) of this section [regarding transactions with lenders]*,* in any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and *before any substantial change in condition of the subject of the consumer transaction.*

(Emphasis added.)  This section provides a consumer's cause of action and remedy authorized via an individual lawsuit.  This section encompasses and dictates causes of action available to buyers who have suffered violations of the HSSA as well.  R.C. 1345.09 does not indicate a buyer is entitled to a no-questions-asked refund for payment for services already rendered, as argued by Appellant.

**{¶42}**  As stated, if a seller fails to provide the buyer with the notice to cancel, and the buyer later elects to cancel, the seller is required to honor the right to cancel, and, among other things, shall "refund all payments made under the contract or sale."  R.C. 1345.23(D)(4)(a).

**{¶43}**  R.C. 1345.23(D)(4)(a) does not state a buyer is entitled to a refund of all payments made under the contract or sale regardless of the work performed, product installed, and services rendered.  There is no indication that R.C. 1345.23(D)(4)(a) is intended to create a windfall provision by which a homeowner can reap the benefits of work performed and obtain a refund for amounts paid for work performed years later.

Case No. 22 MA 0117

**{¶44}** The HSSA is a part of the CSPA. Thus, they are in pari materia, and must be construed together and any apparent contradictions reconciled, if possible. *Blackwell v. Bowman*, 150 Ohio St. 34, 44, 80 N.E.2d 493 (1948); *State, ex rel. O'Neil v. Griffith*, 136 Ohio St. 526, 27 N.E.2d 142 (1940). Consistent with a plain reading of the provisions in pari materia, we conclude invoking the right to cancel is an additional remedy, which ends *unfulfilled* obligations under a contract often referred to as executory obligations. "'"All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. * * * [I]n the interpretation of related and co-existing statutes[, we] must harmonize and give full application to all such statutes unless they are irreconcilable and in hopeless conflict."' (Citations omitted.)" *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 45.

**{¶45}** Thus, to the extent other courts have held that this provision affords the homeowner a refund of all money paid under a HSSA contract, regardless of work satisfactorily performed, we disagree. *See Kamposek v. Johnson*, 11th Dist. Lake No. 2003-L-124, 2005-Ohio-344, ¶ 31. While the *Kamposek* Court contrasted the statutes, it did not read them together in an effort to find harmony and equity. *Kamposek* likewise did not consider the technical meaning of the words "cancellation" or "refund," which concern future obligations and the return of money for overpayment. Thus, we disagree and reject the analysis of *Kamposek* and its progeny.

**{¶46}** The result Appellant urges is not apparent from a plain reading of the provision, especially when read in pari materia with R.C. 1345.09 and focusing on the technical meanings of the words "cancellation" and "refund." *Black's Law Dictionary* defines "cancellation" in relevant part as,

> An annulment or termination of a promise or an obligation; specif., the purposeful ending of a contract because the other party has breached one or more of its terms. • The effect of cancellation is generally the same as that of termination, *except that the canceling party retains remedies for breach of the whole contract or any unperformed balance.*

(Emphasis added.) *Black's Law Dictionary* (11th ed. 2019). And in the ordinary use and meaning of the word, "cancel" means, "to decide not to conduct or perform (something

planned or expected) usually without expectation of conducting or performing it at a later time * * *." https://www.meriam-webster.com/dictionary/cancel (accessed May 2, 2023).

{¶47} In the context of the Uniform Commercial Code, one treatise emphasized that the remedies of cancellation and rescission are often confused by courts:

> One remedy (cancellation) ends future (executory) obligations. The other, rescission, allows the injured party to go back and essentially undo the entire contractual relationship. Rescission in this sense resembles cancellation, but is designed to restore the parties to a position that would have existed if the contract had never been formed. That more expansive remedy, however, should not be the norm. Indeed, cases that actually address this type of remedy (rescission) ordinarily reserve it to cases of extreme breach * * *.
>
> Cancellation does not affect prior conduct, but merely ends executory obligations.

11 Raymond T. Nimmer, *Hawkland Uniform Commercial Code Series*, Section 802:1 (2023). Thus, ordinarily one cannot cancel a contract for services after completion. This contention is neither logical nor consistent with the ordinary meaning of the word "cancel" or the legal definition of "cancellation."

{¶48} Furthermore, "refund" is defined as: "1. The return of money to a person who overpaid, such as a taxpayer who overestimated tax liability or whose employer withheld too much tax from earnings. 2. The money returned to a person who overpaid." *Black's Law Dictionary* (11th ed. 2019). Both of these "refund" definitions include the concept of overpayment, such as when payment is made for services not yet performed.

{¶49} Thus, while we agree Appellant had the right to cancel the parties' continuing agreement or contract for any services not performed based on the HSSA violation, we also conclude Appellant was only entitled to a refund of money paid for services not yet rendered, consistent with the meaning of the words "cancellation" and "refund." In addition to cancellation and a refund for overpayment, if any, Appellant also had the remedies set forth in R.C. 1345.09 available.

{¶50} R.C. 1345.09 has consistently been construed as requiring an election between the mutually exclusive remedies of rescission or damages due to the clearly

expressed intent of the legislature embodied in the statute indicating a buyer can choose recission _or_ damages. _Eckman v. Columbia Oldsmobile, Inc._, 65 Ohio App.3d 719, 722, 585 N.E.2d 451 (1st Dist.1989). However, we conclude this election of remedy reading does not extend to the remedy of cancellation set forth in R.C. 1345.23. Neither R.C. 1345.09 nor R.C. 1345.23 states cancellation takes the place of the remedies in R.C. 1345.09. And as stated, the definition of the term cancellation provides that one who cancels a contract retains the right to sue for breach. _See_ CANCELLATION, _Black's Law Dictionary_ (11th ed. 2019).

{¶51} Thus, we find no ambiguity, and upon reading the statutes collectively, as required, and using the plain language of the legislature and the terms invoked, we reach a sensible interpretation of the provisions consistent with reason and logic. Contrary to the holdings of other courts, we conclude the remedy of cancellation is _in addition_ to the other remedies in R.C. 1345.09. A buyer invoking the right to cancellation should end any future obligations and entitle the buyer to a refund of money paid under the agreement for future work, if any. This cancellation still allows the buyer to sue for breach and potentially "recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in non-economic damages" under R.C. 1345.09(A). The buyer's right to cancel continues until "the seller has complied with" the statute's cancellation notice requirements. R.C. 1345.23(C). Neither R.C. 1345.09 nor R.C. 1345.23 states the remedy of cancellation is instead of those in R.C. 1345.09.

{¶52} Consistent with this interpretation, is the decision in _Fain v. Hoptry_, 34 Ohio App.3d 148, 149, 517 N.E.2d 550 (10th Dist.1986). In _Fain_, the Tenth District Court of Appeals held the contractor was unable to enforce a HSSA contract against the homeowner when the contract did not include the three-day notice of cancellation. The contractor had yet to perform work on the home and the homeowner wanted to cancel and obtain a refund of her $2,000 deposit, which the contractor claimed was forfeited under the plain language of the parties' contract. The court allowed cancellation and ordered a refund of the homeowner's deposit. _Id._

{¶53} Further, in _Wisniewski v. Marek Builders, Inc._, 8th Dist. No. 104197, 2017-Ohio-1035, 87 N.E.3d 696, ¶ 21, the Eighth District held that cancellation of a HSSA contract by the buyer for the seller's failure to provide notice of a three-day right to cancel

prohibited the seller from enforcing the contract's arbitration clause. The court noted the buyer may still be subject to the seller's unjust enrichment claim. *Id.* at ¶ 8. *Marek* did not address any issues regarding a refund. *Id.*

**{¶54}** Because we reach the merits of the parties' arguments based on the statutory language, we need not delve into the sword/shield dichotomy employed by certain courts, and repeated by the trial court here, in order to achieve an equitable result. It appears courts have adopted this shield/sword analysis to circumvent an apparent misreading of the statute that leads to wholly inequitable results. To the extent the trial court used this sword analysis, we find error. However, we affirm the decision of the trial court, albeit for different reasons.

**{¶55}** Here, Appellant filed this lawsuit attempting to capitalize on the fact he was not given the proper notice. He did not sue for breach of contract or deficient workmanship and did not provide evidence in this regard at trial. Instead, he seeks a refund of all money paid—almost $50,000—based on the lack of notice. He does not dispute the work was completed.

**{¶56}** "The failure to comply with the HSSA constitutes a deceptive act or practice in connection with a consumer transaction in violation of the CSPA. Thus, any violation of the HSSA is a violation of the CSPA." (Footnotes deleted.) *Paul Davis Restoration of Cleveland Metro W. v. Karaman*, 8th Dist. Cuyahoga No. 84824, 2005-Ohio-4017, ¶ 14. Pursuant to R.C. 1345.09, when a violation of the CSPA occurs, a consumer may elect to rescind the contract or sue for three times the amount of the actual damages. Cancellation is an additional remedy for an HSSA violation in addition to those in R.C. 1345.09. Thus, the buyer's right to cancel is a remedy that cancels future obligations and requires the refund or return of payments made toward those future obligations, if any. A choice to cancel does not eliminate the other remedies, but is in addition to them.

**{¶57}** "If the buyer decides to cancel the sale, the seller must refund all payments made under the contract to the buyer. R.C. 1345.23(D)(4)(a). This provision effectively allows the buyer to cancel the contract at any time, *but the buyer may be susceptible to an unjust enrichment claim by the seller.*" (Emphasis added.) *Garber v. STS Concrete Co.*, 8th Dist. No. 99139, 2013-Ohio-2700, 991 N.E.2d 1225, ¶ 18. The right to cancel does not preclude counterclaims for unjust enrichment or set offs for the value of services

rendered. *Std. Plumbing & Heating Co. v. Hartman*, 5th Dist. Richland No. 2003CA0091, 2004-Ohio-3964, ¶ 108, citing *Atelier Design, Inc. v. Campbell*, 68 Ohio App.3d 724, 728, 589 N.E.2d 474 (2d Dist.1990).

{¶58} The confusion of other courts likely stems from a lack of clarity as to what cancellation means, as well as the repetition of the seemingly erroneous conclusion that the election of the right to cancellation in R.C. 1345.23(D)(4)(a) eliminates the right to seek damages under R.C. 1345.09. To the contrary, this conclusion is inconsistent with a plain reading of the statutes and the fact that the word "cancellation" allows a party to seek damages for breach.

{¶59} This conclusion is also supported by the limitation on *when* rescission is available as a remedy for a CSPA violation. R.C. 1345.09(C)(1) states rescission is only an appropriate remedy under the CSPA "within a reasonable time" after discovery of the grounds for it and *before* "there has been a substantial change in the subject of the consumer transaction." *Reichert v. Ingersoll,* 18 Ohio St.3d 220, 224, 480 N.E.2d 802 (1985). *But see Garber v. STS Concrete Co.*, 8th Dist. Cuyahoga No. 99139, 2013-Ohio-2700, 991 N.E.2d 1225, ¶ 25. Thus, where there was a substantial change in the subject of the consumer transaction, like the instant case, rescission is not an available remedy. *Reichert, supra.*

{¶60} Moreover, although Appellant emphasizes the HSSA does not have a "clean hands" provision, nor does it indicate a seller can pursue a claim for unjust enrichment, we note the CSPA and HSSA likewise do not preclude an unjust enrichment claim, claim for breach, or other counterclaims by a seller.

{¶61} Based on the foregoing, we find Appellant's sole assignment of error lacks merit.

Conclusion

{¶62} In summation, we affirm the trial court's decision to the extent it found a violation of the HSSA and did not award a refund of money Appellant paid Appellee under the contract for work performed. The remaining executory obligations under their agreement, if any, were canceled. There was no allegation or evidence of overpayment or payment for services not yet completed.

**{¶63}** Moreover, because Appellant did not allege a breach of contract or other affirmative claim for relief and he likewise did not present evidence of any actual damages, the trial court and this court lack the authority to award damages for claims not asserted or established. Although Appellant could have sought damages under R.C. 1345.09, he did not assert an argument in this regard and did not raise the issue to the trial court or on appeal as an alternative ground for relief. App.R. 12(A)(1)(b). Thus, the trial court's decision awarding Appellant zero damages is also affirmed.

Waite, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**