[Cite as *1900 Capital Trust II, by US Bank Trust Natl. Assn. v. House-Redd*, 2025-Ohio-3274.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

1900 CAPITAL TRUST II, BY US
BANK TRUST NATIONAL
ASSOCIATION,

      Plaintiff-Appellee,

      v.

YVONNE HOUSE-REDD, ET AL.,

      Defendants-Appellants.

:
:
:
:
:
:
:
:
:

No. 114293

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
               AND REMANDED
**RELEASED AND JOURNALIZED:** September 11, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-973730

***Appearances:***

Sandhu Law Group, LLC, and David T. Brady, *for
appellee.*

Sam A. Zingale, *for appellant.*

LISA B. FORBES, P.J.:

{¶ 1} Appellant Yvonne House-Redd ("House-Redd") appeals from a
decision of the Cuyahoga County Court of Common Pleas granting summary
judgment in favor of appellee, 1900 Capital Trust II, by U.S. Bank Trust National

Association, not in its individual capacity but solely as Certificate Trustee ("Capital Trust"), in a foreclosure action involving property owned by House-Redd. She also challenges the trial court's denial of her motion to dismiss the foreclosure complaint on the grounds that the trial court lacked subject-matter jurisdiction to hear the case because Capital Trust lacked standing to sue. For the reasons set forth below, we reverse the grant of summary judgment, as genuine issues of material fact remain regarding whether Capital Trust is entitled to enforce the note and mortgage, and we affirm the trial court's denial of House-Redd's motion to dismiss.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 23, 1996, Lillie M. House, the mother of House-Redd, acquired title to real estate located at 2201 East 100th Street, Cleveland, Ohio 44106 (the "Property"). On October 27, 2003, Lillie M. House executed a promissory note in the principal amount of $79,000 in favor of New Century Mortgage Corporation ("New Century"). The note was secured by a mortgage on the property in the same amount. The mortgage was recorded with the Cuyahoga County Recorder on October 31, 2003.

{¶ 3} Following her mother's death in October 2016, House-Redd became the owner of the Property pursuant to a survivorship deed her mother executed in January 2016, which had placed title to the Property in both their names. House-Redd did not continue paying her deceased mother's mortgage on the Property. As a result, on November 7, 2017, U.S. Bank National Association, as Trustee Under Pooling and Servicing Agreement dated as of January 1, 2004 Asset-Backed

Securities Corporation Home Equity Loan Trust 2004-HEI Asset-Backed Pass-Through Certificates, Series 2004 HEI, which allegedly held the note and mortgage at the time, sued to foreclose on the Property. The complaint alleged that the unpaid principal balance on the mortgage was $61,559.35. To settle the lawsuit and avoid foreclosure, on May 3, 2019, House-Redd entered into a loan-modification agreement with the bank. The parties agreed that the outstanding principal balance on the loan would be reduced and the monthly payment would be modified, among other terms. The loan-modification agreement expressly incorporated the original note and mortgage. House-Redd did not make any payments on the modified loan.

{¶ 4} On January 12, 2023, Capital Trust filed a complaint seeking to foreclose on the Property. In it, Capital Trust asserted that it was the current holder of the note and mortgage, and that the note was in default. On September 13, 2023, Capital Trust filed an amended complaint after having been granted leave to do so. In its motion for leave to file an amended complaint, Capital Trust explained that while preparing its motion for summary judgment, it discovered that the original note had been lost or destroyed; it sought leave to amend to proceed under a lost-note affidavit.

{¶ 5} In its amended complaint, Capital Trust alleged that it was entitled to enforce a note executed by Lillie M. House, that the note was in default, and that the amount due on the note was $39,522.12, together with interest at a rate of 4.7500 percent per year from March 1, 2019. The amended complaint explained that the original note had been lost, and attached a photocopy of the original note along with

a lost-note affidavit that was executed on August 9, 2023 (the "Lost-Note Affidavit"). The copy of the note attached to the amended complaint includes the following blank endorsement from New Century Mortgage:



{¶ 6} On February 22, 2024, Capital Trust filed a motion for summary judgment arguing that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law in the foreclosure action. Attached as exhibit A to the motion was an "Affidavit of Status of Account" executed by Robert Ortega, a document-verification specialist with NewRez LLC d.b.a Shellpoint Mortgage Servicing, acting as servicer and attorney-in-fact for Capital Trust ("Shellpoint"). In his affidavit, Ortega stated that in his role he had reviewed various business records and files maintained by Shellpoint concerning the account of Lillie M. House. He affirmed that he had examined a copy of the electronically stored note and mortgage, along with related payment history. According to Ortega, "Lillie House aka Lillie Mae House, deceased, has failed to make the payment due for April 1, 2019 and has not satisfied the payments that have come due thereafter." A copy of the payment history was included with the affidavit. Ortega further stated that the amount due on the account was $39,522.12, plus interest at a rate of 4.75 percent per annum

accruing from March 1, 2019. A copy of the Lost-Note Affidavit was also attached as an exhibit to Ortega's affidavit.

{¶ 7} Additional exhibits to the motion for summary judgment included copies of the original note and mortgage, the note and mortgage as modified by House-Redd, and several documents evidencing the corporate assignments of the mortgage, beginning with New Century as assignor and eventually ending with Capital Trust as the final assignee.

{¶ 8} House-Redd opposed Capital Trust's motion for summary judgment, arguing that Capital Trust had failed to establish standing to foreclose against the Property. Specifically, House-Redd cited a document allegedly recorded on December 13, 2023, with the Cuyahoga County Recorder's Office — after Capital Trust initiated its foreclosure action — that purported to reflect an assignment of the mortgage made on September 6, 2023, intended to "fill a gap" in the chain of assignments between an assignment recorded on March 24, 2020, and an assignment recorded on July 10, 2020.

{¶ 9} House-Redd argued that this September 6, 2023 assignment raised a genuine issue of material fact as to whether Capital Trust had standing to enforce the note and mortgage at the time it filed its foreclosure action. Additionally, House-Redd asserted that both the promissory note and the mortgage violated the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. (hereinafter "CSPA") and were, therefore, unenforceable.

**{¶ 10}** On May 13, 2024, the magistrate issued a decision granting summary judgment in favor of Capital Trust. The magistrate found that Capital Trust was entitled to enforce the note and mortgage, relying on the Ortega and Lost-Note affidavits as evidence. Additionally, the magistrate found that the September 6, 2023 assignment of the mortgage was a "rogue" or "stray" assignment. The magistrate described the assignment as being "outside the chain of assignments" submitted in support of summary judgment, and concluded that because off this, the "assignor[] did not have capacity to assign [the mortgage] at the time, and the assignment[] [was therefore a] nullit[y]." Lastly, the magistrate rejected House-Redd's CSPA defense to summary judgment.

**{¶ 11}** On May 23, 2024, House-Redd filed objections to the magistrate's decision. One week later, on May 30, 2024, she filed a motion to dismiss the foreclosure complaint for lack of subject-matter jurisdiction. In her motion, House-Redd argued that the trial court lacked subject-matter jurisdiction to hear and determine the foreclosure action because Capital Trust did not have standing to bring the action, reiterating similar standing arguments raised in her opposition to summary judgment.

**{¶ 12}** On June 18, 2024, the trial court denied House-Redd's motion to dismiss and on July 29, 2024, the court issued an order adopting the magistrate's decision granting summary judgment in favor of Capital Trust and overruling House-Redd's objections. In its order, the trial court found:

The mortgage assignment to Plaintiff was executed before the date of filing of Plaintiff's Complaint herein. The Note was indorsed in blank and was attached to the original complaint. Plaintiff submitted an Affidavit of Status of Account and an Affidavit of Lost Note. Plaintiff's evidentiary materials are sufficient to demonstrate that Plaintiff has standing because it holds the Mortgage and is entitled to enforce the Note.

. . .

The Court finds that all necessary parties have been properly served according to law and are properly before the court.

. . .

Reasonable minds could conclude from the evidence submitted only that Plaintiff is entitled to judgment and a decree of foreclosure. Accordingly, Plaintiff's motion for summary judgment is granted.

{¶ 13} House-Redd now appeals from both the trial court's grant of summary judgment in favor of Capital Trust and its denial of her motion to dismiss, raising the following three assignments of error:

> 1. The trial court erred in not dismissing this foreclosure action because plaintiff-appellee 1900 Capital Trust II, By US Bank Trust National Association, Not in its Individual Capacity but Solely as Certificate Trustee lacked standing to bring a foreclosure action.

> 2. The trial court erred in granting 1900 Capital Trust II summary judgment as to standing in that the "gap assignment" submitted by defendant-appellant Yvonne House-Redd, at a minimum, raised genuine issues of material fact relating to the issue of standing.

> 3. The trial court erred in granting 1900 Capital Trust II summary judgment as to House-Redd's Consumer Sales Practices Act claims because the evidence in the record construed in the light most favorable to House-Redd created genuine issues of material fact pertaining to each of those claims.

## II. LAW AND ANALYSIS

{¶ 14} As an initial matter, Ohio's Rules of Appellate Procedure mandate that an appellant's brief contain "a statement of the assignments of error presented for review with reference to the place in the record where each error is reflected." App.R. 16(A)(3). "'This court rules on assignments of error, not mere arguments.'" *Isreal v. Franklin Cty. Commrs.*, 2021-Ohio-3824, ¶ 10 (10th Dist.), quoting *Huntington Natl. Bank v. Burda*, 2009-Ohio-1752, ¶ 21 (10th Dist.), citing App.R. 12(A)(1)(b). House-Redd's briefing collapses the arguments related to her first and second assignments of error into one, more-or-less, overarching argument that the trial court erred in both granting summary judgment and denying her motion to dismiss because Capital Trust did not prove its entitlement to enforce the note and mortgage. Accordingly, for ease of analysis, we address these assignments of error together.

### A. First and Second Assignments of Error: Summary Judgment and Motion to Dismiss

{¶ 15} House-Redd argues that the trial court erred when it awarded summary judgment to Capital Trust and when it denied her motion to dismiss for lack of subject-matter jurisdiction. An appellate court reviews a trial court's ruling on summary judgment de novo, applying the same Civ.R. 56 standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Accordingly, the appellate court conducts an independent review of the record to determine whether summary judgment is appropriate, without affording any deference to the trial

court's determination. *See Johnson v. Cleveland City School Dist.*, 2011-Ohio-2778, ¶ 53 (8th Dist.). "An appellate court reviews a trial court's decision on a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction under a de novo standard of review." *McGraw v. Jarvis*, 2021-Ohio-522, ¶ 23 (10th Dist.).

{¶ 16} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, in viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion and that conclusion is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 17} On a motion for summary judgment, the moving party bears the initial burden of identifying specific facts in the record that affirmatively demonstrate entitlement to judgment in their favor. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the moving party fails to meet this burden, summary judgment must be denied. *Id.* at 293. However, if the burden is met, the nonmoving party then assumes a reciprocal obligation to point to specific facts in the record showing a genuine issue of material fact for trial. *Id.* Summary judgment is proper if the nonmoving party fails to satisfy this burden. *Id.*

{¶ 18} "Civ.R. 12(B)(1) permits dismissal where the trial court lacks jurisdiction over the subject matter of the litigation." *McGraw*, 2021-Ohio-522, at ¶ 23 (10th Dist.). The Ohio Supreme Court has explained subject-matter jurisdiction as follows:

> Subject-matter jurisdiction refers to the constitutional or statutory power of a court to adjudicate a particular class or type of case. *Pratts v. Hurley,* 2004-Ohio-1980, ¶ 11-12. "It is a 'condition precedent to the court's ability to hear the case. If a court acts without jurisdiction, then any proclamation by that court is void.'" *Id.* at ¶ 11, quoting *State ex rel. Tubbs Jones v. Suster,* 84 Ohio St.3d 70, 75 (1998). "A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Bank of Am., N.A. v. Kuchta,* 2014-Ohio-4275, ¶ 19. Rather, the focus is on whether the forum itself is competent to hear the controversy. *See* 18A Wright, Miller & Cooper, *Federal Practice and Procedure*, Section 4428, at 6 (3d Ed.2017) ("Jurisdictional analysis should be confined to the rules that actually allocate judicial authority among different courts").

*State v. Harper*, 2020-Ohio-2913, ¶ 23.

{¶ 19} In deciding a Civ.R. 12(B)(1) motion to dismiss for lack of subject-matter jurisdiction, a court must dismiss the complaint if it fails to allege any cause of action cognizable in the forum. *See McGraw* at ¶ 23.

### 1. A Genuine Issue of Material Fact Exists as to Whether Capital Trust is Entitled to Enforce the Note

{¶ 20} To prevail on summary judgment in a foreclosure action, the plaintiff must present evidentiary quality materials establishing:

> (1) that the plaintiff is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the plaintiff is not the original mortgagee, the chain of assignments and transfers; (3) that the mortgagor is in default; (4) that all conditions precedent have been met; and (5) the amount of principal and interest due.

*Deutsche Bank Natl. Trust Co. v. Najar*, 2013-Ohio-1657, ¶ 17 (8th Dist.). House-Redd's first and second assignments of error challenge Capital Trust's ability to prove the first two requirements.

{¶ 21} A plaintiff "seeking to foreclose on [a] mortgage must prove that it [is] the person or entity entitled to enforce the note secured by the mortgage." *Deutsche*

*Bank Natl. Trust Co. v. Holden*, 2016-Ohio-4603, ¶ 26. "A note secured by a mortgage is a negotiable instrument that is governed by R.C. Chapter 1303." *MorEquity, Inc. v. Gombita*, 2018-Ohio-4860, ¶ 34 (8th Dist.). Under R.C. 1303.31(A), a person or entity is entitled to enforce the note if the person or entity is: (1) the holder of the instrument; (2) a nonholder in possession of the instrument who has the rights of a holder; or (3) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.C. 1303.38 or 1303.58(D).[1]

{¶ 22} Capital Trust concedes that it is not in possession of the note because it has been lost, stolen, or destroyed. Accordingly, R.C. 1303.38, which governs the enforcement of a note that has been lost, stolen or destroyed, is the controlling statute for establishing Capital Trust's entitlement to enforce the note. [2] R.C. 1303.38 states:

> (A) A person not in possession of an instrument is entitled to enforce the instrument if all of the following apply:
>
> (1) The person seeking to enforce the instrument was entitled to enforce the instrument when loss of possession occurred or has directly or

---

[1] R.C. 1303.58 addresses how a third-party drawee may establish the right to enforce a note after mistakenly paying the obligation. It has no bearing on the matter at hand.

[2] Throughout its briefing in this case, Capital Trust repeatedly asserts that it is the "holder" of the promissory note executed by Lillie M. House. This assertion is incorrect. Being a "holder" requires physical possession of the original note. *See* R.C. 1301.201(B)(21)(a); *see also*, *Bank of Am., N.A. v. Kenney*, 2015-Ohio-2485, ¶ 10 (1st Dist.). Here, Capital Trust concedes that the note has been lost, stolen, or destroyed. Therefore, it is not in physical possession of the note.

indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred.

(2) The loss of possession was not the result of a transfer by the person or a lawful seizure.

(3) The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

(B) A person seeking enforcement of an instrument under division (A) of this section must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, divisions (A) and (B) of section 1303.36 of the Revised Code applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection for the person required to pay the instrument may be provided by any reasonable means.

Proof of the right to enforce a lost, stolen, or destroyed instrument may be shown through the filing of what has been termed a "lost-note affidavit." *See U.S. Bank Trust N.A. v. Phann*, 2023-Ohio-2214, ¶ 24 (2d Dist.).

**{¶ 23}** Our review of the record reveals the Lost-Note Affidavit submitted by Capital Trust in support of its motion for summary judgment is confusing, internally inconsistent and inconsistent with other materials attached to its motion. In short, the Lost-Note Affidavit itself creates issues of material fact.

**{¶ 24}** The Lost-Note Affidavit states:

Kayla Stanton, being duly sworn, deposes and says:

1. That s/he is a Supervisor of Newrez LLC d/b/a Shellpoint Mortgage Servicing (the "Servicer") and is authorized to make this Lost Note Affidavit ("Affidavit") as a representative of the servicer;

. . .

3. That the Servicer services the loan related to the note identified below on behalf of the note owner, MCM (collectively with its successors, assigns and transferees, the "Owner").

• Borrower(s): Lillie House

• Original Lender: New Century Mortgage Corporation

• Date of Note: 10/27/2003

• Original principal amount of Note: $79,000.00

• Secured by a mortgage/deed of trust/security instrument dated 10/31/2003 and recorded in, on, Instrument No. 200310310708, Book No. NA, page NA.

• Property Address: 2201 East 100th Street, Cleveland, OH 44106

4. That after having conducted a diligent investigation of its records and files, the Servicer is unable to locate the original note and believes that said note is either lost, misfiled, misplaced or destroyed;

5. That according to the Servicer's records, said note was not released, paid off, satisfied, assigned, transferred, pledged, hypothecated or otherwise disposed of;

6. That upon discovering that the original note was potentially lost or misplaced, the Servicer took the following actions in an attempt to ascertain the whereabouts of said note:

a. The Servicer reviewed its file records to determine if the original note was located therein;
b. The Servicer requested that the appropriate loan collateral file custodian review its files to determine if the original note was located therein; and
c. The Servicer requested all outside law firm(s) retained to handle legal matters, pertaining to the mortgage loan associated with the note, review its

files to determine if the original note was located therein;

7. That the Servicer is aware that the Owner may rely upon the statements made herein as to such note being lost, mislaid, misfiled or destroyed and not released, paid off, satisfied, assigned, transferred, pledged, hypothecated or otherwise disposed of; and

8. Plaintiff has directly or indirectly acquired ownership of the note, or is the servicer for the entity that acquired ownership of the note, from a person entitled to enforce the note when loss of possession occurred as follows [*outline AOMs or chain of ownership*]

Assignment Chain

Assignment 1:

Assignor: U.S. Bank National Association, as Trustee for Asset Backed Securities Corporation Home Equity Loan Trust 2004-HE1 Asset Backed Pass-Through Certificates, Series 2004-HE1

Assignee: U.S. Bank National Association, not in its individual capacity, but solely as Trustee for NRZ Pass-Through Trust VII (NPL) at PHH Mortgage Corporation Successor by Merger to Ocwen Loan Servicing, LLC Recording Information: Instrument# 202003240296 / Book NA / Page NA Recording Date: 03/24/2020

Assignment 2:

Assignor: New Century Mortgage Corporation by Its Attorney in Fact PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC

Assignee: U.S. Bank National Association, not in its individual capacity, but solely as Trustee for NRZ Pass-through Trust VII (NPL) Recording Information: Instrument# 202007100261/ Book NA/ Page NA Recording Date: 07/10/2020

Assignment 2[sic]:

Assignor: U.S. Bank National Association, not in its individual capacity, but solely as Trustee for NRZ Pass-through Trust VII (NPL)

Assignee: 1900 Capital Trust II, by US Bank Trust National Association, not in its individual capacity but solely as Certificate

Trustee Recording Information: Instrument#202203310409/ Book NW Page NA Recording Date; 03/31/2022

Endorsement Chain

Endorsement 1:

Payor: New Century Mortgage Corporation

Payee: Blank

{¶ 25} The affidavit creates an issue of fact as to who is the "owner" of the note. Paragraph 3 identifies the owner of the note as "MCM (collectively with its successors, assigns, and transferees, the 'Owner')." Paragraph 8, however, states that "Plaintiff has directly or indirectly acquired ownership of the note." Plaintiff in this action is Capital Trust. Nothing in the affidavit explains any connection between MCM and Capital Trust. MCM is not identified as either an assignor or assignee in the mortgage assignment history.

{¶ 26} This inconsistency regarding the identity of the note's "owner" is particularly problematic given that Capital Trust asserts that the lost note was endorsed in blank, which would make it bearer paper, thus giving whomever is in possession of the note an enforcement right. *See* R.C. 1303.10(A)(2) (a promise or order to pay is considered bearer paper if it does not specify a payee); *see also* R.C. 1303.31(A) (a holder is entitled to enforce an instrument); R.C. 1301.201(B)(21)(a person in possession of bearer paper qualifies as a holder).

{¶ 27} Furthermore, the chain of assignments in the affidavit lacks logical coherence. Paragraph 8 states that the "Plaintiff [Capital Trust] has directly or indirectly acquired ownership of the note . . . from a person entitled to enforce the

note when loss of possession occurred," and then presents a series of assignments of the mortgage that does not begin with the original lender and mortgagee, New Century. Instead, the assignment chain starts with an assignment dated March 24, 2020, from one U.S. Bank N.A. entity to another U.S. Bank N.A. entity without offering any explanation as to how the assignor entered the chain of assignments. The confusion continues in the next listed assignment (the first "Assignment 2"), which claims that New Century assigned the mortgage to U.S. Bank N.A. as Trustee for NRZ Pass-through Trust VII in a document recorded on July 10, 2020. However, New Century was not named as the assignee in the previous assignment dated four months earlier.

{¶ 28} The last assignee identified in the Lost-Note Affidavit is Capital Trust with the assignment having been recorded on March 31, 2022. However, the Lost-Note Affidavit creates questions about whether the entity assigning the mortgage to Capital Trust had the authority to do so.

{¶ 29} Moreover, the assignment chain described in the Lost-Note Affidavit does not align with the copies of the recorded mortgage assignments submitted by Capital Trust in its motion for summary judgment. The copies of the recorded mortgage assignment documents show a complete and consistent chain of assignments beginning with New Century and ending with Capital Trust, indicating that Capital Trust is the current assignee of the mortgage.

{¶ 30} Furthermore, under Civ.R. 56(E), affidavits submitted in support of summary judgment must be based on personal knowledge, set forth facts admissible

in evidence, and affirmatively show that the affiant is competent to testify to the matters stated. Although an affiant need not expressly state that their averments are based on personal knowledge, such knowledge must be reasonably inferable from the affiant's position and the facts alleged in the affidavit. *See Huntington Natl. Bank v. Cade*, 2016-Ohio-4705, ¶ 13 (8th Dist.).

{¶ 31} The affiant of the Lost-Note Affidavit neither explicitly affirms personal knowledge of the facts alleged nor provides any context from which such knowledge may reasonably be inferred. Her role as a supervisor at Shellpoint, the loan servicer, along with the content of her averments, fails to establish that she has personal knowledge of whether the note was in fact lost, stolen, or destroyed, whether any effort was made to locate the note, or whether the note was actually lost, stolen, or destroyed while in the possession of another person or entity entitled to enforce it. Likewise, nothing demonstrates a basis for knowledge regarding the chain of assignments. Finally, the affidavit is unsworn, rendering it noncompliant with the requirements of Civ.R. 56(E) for affidavits submitted in support of summary judgment.[3]

---

[3] It is important to note that there is a difference between a notarial acknowledgment and a jurat. A jurat is a notarial certificate that establishes that an oath was given by the notary to the affiant and that the affiant swears to the truth of the statements made within the document. *See Glinsky v. Zeltman (In re Cook)*, 2023-Ohio-4883, ¶ 8-11. An acknowledgment is a notarial certificate that acknowledges that the person appeared before the notary, was properly identified, and signed the document. *Id.* The key difference between a jurat and an acknowledgement is that a jurat provides prima facie evidence that the statements in the document are made under oath. *Id.* This distinction is critical in the context of Civ.R. 56(E), which requires that affidavits submitted in support of a motion for summary judgment be made under oath. In this

**{¶ 32}** Pursuant to R.C. 1303.38(B), a court may not enter judgment in favor of a party seeking to enforce a lost note unless it determines that the person obligated to pay the instrument is adequately protected against the risk of a claim by another party asserting the right to enforce the note. In this case, the Lost-Note Affidavit is insufficient, and if we were to rely on it, the Lost-Note Affidavit creates an issue of material fact as to whether Capital Trust is entitled to enforce the note. As a result, it does not offer adequate protection to House-Redd against the possibility that another party may later assert a competing claim to enforce the instrument.

**{¶ 33}** Therefore, based on the materials presented in support of its motion for summary judgment, Capital Trust has failed to establish the first essential element of foreclosure: entitlement to enforce the note. Genuine issues of material fact remain as to this element.

### 2. The "Gap Assignment" Raises Further Questions of Fact

**{¶ 34}** In addition to the concerns previously discussed regarding whether Capital Trust is entitled to enforce the note — and for many of the same reasons outlined above — we find that Capital Trust has failed to satisfy the second element required for foreclosure: demonstrating that it has been properly assigned the mortgage and is the final party in the chain of assignments. As noted, the Lost-Note Affidavit presents conflicting information regarding whether Capital Trust

---

case, the notarial certificate on the Lost-Note Affidavit is merely an acknowledgment, not a jurat and, therefore, does not satisfy that requirement.

possesses a valid assignment of the mortgage. In addition, in her opposition to summary judgment and motion to dismiss, House-Redd directs attention to a document purporting to show that an assignment of the mortgage was executed on September 6, 2023, and filed with the county recorder on December 13, 2023.[4] This document says the following:

Date of Assignment: September 6, 2023

Assignor: U.S. Bank National Association, not in its individual capacity but solely as Trustee for NRZ Pass-Through Trust VII (NPL), by its attorney-in-fact, PHH Mortgage Corporation, 5720 Premier Park Drive, West Palm Beach, FL 33407

Assignee: New Century Mortgage Corporation, 18400 Von Karman, Suite 1000, Irvine, CA 92612

Original Mortgagor: Lillie M. House, an unmarried woman

Mortgage Date: October 27, 2003

Recorded: October 31, 2003, as Instrument No. 200310310708, Cuyahoga County, Ohio

Property Address: 2201 East 100th Street, Cleveland, OH 44106

The December 13, 2023 filing included the following note:

This is a gap assignment being filed to correct the chain of title. This assignment fills a gap in the chain of title between the assignment

---

[4] Capital Trust notes that this document, which was discussed by House-Redd in her opposition to summary judgment and was attached to her motion to dismiss, is neither certified nor authenticated by the county recorder's Office. As such, it lacks proper authentication and is not appropriately before the court for purposes of summary judgment or in connection with the motion to dismiss. *See* Civ.R. 56(E); *see also* Evid.R. 902(4). Nonetheless, because both parties reference it extensively on appeal, we address it here only to observe that it raises more questions than it answers. Our decision to reverse summary judgment, however, is based on our de novo review of the conflicting evidence Capital Trust submitted in support of its motion.

recorded on 03/24/2020 (Inst. #202003240296) and the assignment recorded on 07/10/2020 (Inst. #202007100261).

{¶ 35} Although the magistrate's decision, and the trial court's judgment adopting the same, characterized this gap assignment as a "rogue" or "stray" assignment made outside the established chain and thus invalid, no explanation for this conclusion was provided. Our review of the record reveals that the trial court was not in a position to definitively determine the validity or impact of that assignment, especially given the contradictory evidence submitted by Capital Trust regarding the chain of assignments.

{¶ 36} As noted, Capital Trust provided copies of the assignments that had been filed with the county recorder's office. Those documents show an unbroken chain of assignments from New Century through to Capital Trust. The "gap" assignment purports to introduce a new assignment not reflected on and not consistent with those earlier recorded documents, but that appears to be attempting to address the issue created by the Lost-Note Affidavit.

{¶ 37} Additionally, the document indicates that the purported assignment took place on September 6, 2023, and reflects that the assignor and assignee are entities other than Capital Trust. It is important to note that Capital Trust filed the original foreclosure complaint in January 2023 asserting that it had the right to enforce the note and foreclose on the mortgage. If Capital Trust is indeed the last in the chain of assignees as it asserts it is, it is unclear how a different entity could have

assigned the mortgage to another party after Capital Trust filed for foreclosure in this case.

{¶ 38} Finally, although the document refers to itself as a "gap" assignment intended to address a lapse in recorded assignments between March 24, 2020, and July 10, 2020, the document nevertheless states that the *assignment occurred* on September 6, 2023. As a result, it is ambiguous whether the document is memorializing an earlier transaction or effectuating a new assignment.

{¶ 39} For the reasons stated above, the legal effect of the document cannot be determined at this time and because of this, the trial court erred in adopting the magistrate's determination that the document reflects a "stray" or "rogue" assignment.

{¶ 40} Accordingly, we sustain House-Redd's first and second assignments of error, to the extent they argue that the trial court erred in granting summary judgment in favor of Capital Trust on its foreclosure claim. We remand to the trial court for further proceedings necessary to resolve the genuine issues of disputed fact.

### 3. Standing

{¶ 41} In addition to arguing that the trial court erred in granting summary judgment to Capital Trust because it lacked standing to pursue the foreclosure action, in her first and second assignments of error, House-Redd also takes issue with the trial court's denial of her motion to dismiss the complaint for lack of standing.

{¶ 42} There is a fundamental difference between not having standing to sue in foreclosure and not being able to receive judgment in a foreclosure action because questions of fact remain as to the right to enforce. As explained by the Ohio Supreme Court:

> Standing depends on whether the claimant has a sufficient personal stake in the litigation to obtain a judicial resolution of the controversy. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 21. Thus, to establish standing generally, a claimant must show it "suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Moore v. Middletown,* 2012-Ohio-3897, ¶ 22. We have explained that "[t]hese three factors — injury, causation, and redressability — constitute 'the irreducible constitutional minimum of standing.'" *Id.,* quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

*Holden*, 2016-Ohio-4603, at ¶ 20.

{¶ 43} While standing is indeed a jurisdictional requirement, it does not implicate the court's subject-matter jurisdiction as asserted by House-Redd. As the Ohio Supreme Court clarified in *Kuchta*, 2014-Ohio-4275, at ¶ 22:

> Standing is certainly a jurisdictional requirement; a party's lack of standing vitiates the party's ability to invoke the jurisdiction of a court — even a court of competent subject-matter jurisdiction — over the party's attempted action. But an inquiry into a party's ability to invoke a court's jurisdiction speaks to jurisdiction over a particular case, not subject-matter jurisdiction.

(Cleaned up.) (Emphasis deleted.)

{¶ 44} With these principles in mind, we conclude that the trial court did not err in denying House-Redd's motion to dismiss. Her motion asserted that the trial court lacked subject-matter jurisdiction because Capital Trust allegedly lacked standing, as evidenced by the September 6, 2023 gap assignment indicating that

Capital Trust was not the last assignee of the mortgage at the time the complaint was filed.[5] However, since a lack of standing does not divest a court of subject-matter jurisdiction, the trial court properly denied the motion. *See* Civ.R. 12(B)(1).

{¶ 45} Even assuming the trial court considered the motion as a challenge to Capital Trust's standing to sue, rather than a challenge only to the court's subject-matter jurisdiction, we would still affirm its denial. In its complaint, Capital Trust alleged an injury in fact by asserting that it was entitled to enforce a mortgage note that had gone into default. While a plaintiff must have standing at the time it files suit, it is not required to prove standing at that point. *See Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 12 ("proof of standing may be submitted subsequent to filing the complaint").

{¶ 46} House-Redd's reliance on the September 6, 2023 "gap" assignment raises a question about whether Capital Trust can prove entitlement to enforce the note, but does not definitively negate it. Because there remain genuine issues of material fact concerning whether Capital Trust is entitled to enforce the note and mortgage, and therefore whether it had standing to sue, we affirm the trial court's denial of the motion to dismiss.

---

[5] Once again, we note that the document attached to House-Redd's motion to dismiss purporting to show the gap assignment was not properly authenticated. Accordingly, the trial court could have appropriately denied the motion on this basis. *See* Evid.R. 902(4).

**B. Assignment of Error No. 3:  Whether the CSPA Defense Created Genuine Issues of Material Fact**

{¶ 47} Having already determined in response to the first and Second assignments of error that summary judgment was improper due to issues of material fact regarding Capital Trust's entitlement to enforce the note and foreclose on the mortgage, we decline to address House-Redd's third assignment of error.  This assignment of error seeks reversal of summary judgment on separate grounds related to alleged CSPA violations.  On remand, House-Redd will have the opportunity to raise her CSPA arguments anew during further proceedings.

**III. CONCLUSION**

{¶ 48} For the foregoing reasons, we reverse the trial court's decision granting summary judgment in favor of Capital Trust on its foreclosure action, vacate the order granting summary judgment, and remand the matter for further proceedings consistent with this opinion.  We affirm the trial court's denial of House-Redd's motion to dismiss.

{¶ 49} Judgment affirmed in part, reversed in part, and cause remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
SEAN C. GALLAGHER, J., CONCUR