[Cite as *Grinder v. Schaaf*, 2026-Ohio-312.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
### PORTAGE COUNTY

| | |
|---|---|
| TIMOTHY GRINDER,<br><br>    Plaintiff-Appellee,<br><br>- vs -<br><br>MARCELLA A. SCHAAF, et al.,<br><br>    Defendant-Appellant. | CASE NO. 2024-P-0081<br><br>Civil Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2022 CV 00386 |

## OPINION AND JUDGMENT ENTRY

Decided: February 2, 2026
Judgment: Affirmed

*Ari H. Jaffe*, *Anna E. Bullock* and *Jeffrey R. Vaisa*, Kohrman Jackson & Krantz, L.L.P., One Cleveland Center, 29th Floor, 1375 East Ninth Street, Cleveland, OH 44114 (For Plaintiff-Appellee).

*Christopher J. Mallin*, 367 North Cleveland Avenue, Mogadore, OH 44260 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1}     Defendant-appellant, Marcella A. Schaaf, appeals the judgments of the Portage County Court of Common Pleas in favor of plaintiff-appellee, Timothy Grinder, awarding him monetary damages, declaring the validity of the mechanic's lien on her property, and ordering the foreclosure thereof.  An Opinion reversing the lower court on the issue of the validity of the mechanic's lien was issued on October 14, 2025.  On reconsideration, and in light of controlling precedent on the issue of the validity of the affidavits supporting the lien, that Opinion is vacated in an entry dated January 21,

2026. Upon reconsideration, this court is now issuing the following new Opinion which affirms the decision of the court below.

***Substantive and Procedural History***

{¶2} On May 26, 2022, Grinder filed a Complaint for Foreclosure on Judgment Lien against Schaaf with respect to property located at 3431 Blitz Road, Kent. The Complaint, in relevant part, sought to foreclose the property in order to satisfy a mechanic's lien in the amount of $99,764.70. Grinder claimed to have obtained the mechanic's lien pursuant to R.C. 1311.06 and 1311.011 *et seq.* upon Schaaf's failure to pay for repair work to the subject property.

{¶3} On November 28, 2022, the trial court granted partial summary judgment in favor of Grinder regarding the validity of the mechanic's lien. Schaaf argued that, although the mechanic's lien states that Grinder had been "duly sworn" before making a statement, "the acknowledgement of the Notary Public did not indicate that she administered an oath to the Plaintiff." The court rejected the argument: "In the instant case, the Plaintiff was duly sworn in his affidavit as evidenced in the body of the same. The Notary Public notarized Plaintiff's sworn statement. As such, this Court finds that the Mechanic's lien includes a valid affidavit."

{¶4} On September 27, 2023, the matter was tried to the Honorable Magistrate Diana J. Prehn.

{¶5} On June 4, 2024, the Magistrate's Decision was issued, in relevant part, granting judgment in favor of Grinder against Schaaf in the amount of $99,764.70; and finding that Grinder had a valid mechanic's lien on the real property located at 3431 Blitz Road, Kent, and was entitled to an order of foreclosure. The issue of attorney fees was

set for hearing at a later date. The magistrate's judgment was based on the following findings:

1. Defendant owns the real property located at 3431 Blitz Road, Kent, Ohio …;

2. The Property was damaged by a kitchen fire on or about March 25, 2020;

…

4. The Defendant's son, Rodney, resides in the Property;

5. Due to the kitchen fire, Defendant filed an insurance claim for damages;

6. Defendant's insurance claim was approved by the insurance company;

…

15. Rodney knew of Plaintiff through acquaintances;

16. Defendant hired Plaintiff as the third contractor to repair the Property;

17. Defendant and Plaintiff met prior to Defendant hiring Plaintiff to repair the Property;

18. Defendant told Plaintiff that she had insurance proceeds available to pay Plaintiff for the restoration work at the Property;

…

20. Defendant hired Plaintiff to complete the restoration and renovation of the Property;

21. The insurance proceeds were to cover all repairs and renovations;

22. Defendant paid Plaintiff [a] $10,000.00 deposit to begin work on the Property;

23. $84,000.00 in insurance proceeds were released to Defendant in May 2021;

…

28. From January 2021 through June 2021, Plaintiff worked at the Property;

…

32. Plaintiff was removed from the Property on June 14, 2021, by Defendant;

33. Rodney was residing at the Property at the time that Plaintiff was removed;

34. Plaintiff testified that all work was approximately 4 days from completion;

…

39. Defendant admitted that she had "not yet" paid for the work that Plaintiff completed at the Property;

40. Defendant was aware that the cost of the repairs and renovation to the Property was more than the $10,000.00 she has already paid Plaintiff;

41. Defendant used some of the insurance proceeds to pay off her credit card, paid an advance to the HVAC contractor, paid an advance to the first contractor and put money into her savings;

…

46. Plaintiff provided the written contracts to Defendant on multiple occasions;

47. Defendant signed the original contract, but Plaintiff lost his copy of the same;

48. Plaintiff provided a copy of the initial contract to Defendant's insurance adjustor;

49. Defendant never rescinded the original contract nor attempted to rescind the contract;

50. The written contract between the parties did not have any rescission language;

51. When asked to execute the last contract and ratify the work agreed upon and already completed, Defendant had Plaintiff removed by the Police on June 14, 2021;

52. Defendant did not sign the last written contract and refused to do so[.]

{¶6} Schaaf filed objections to the Magistrate's Decision which were overruled.

{¶7} On November 15, 2024, the trial court issued a Supplemental Final Judgment Entry and Order of Foreclosure.

{¶8} On December 12, 2024, Schaaf filed a Notice of Appeal. The assignments of error will be addressed out of order for clarity.

***"Second assignment of error: The trial court committed error when it denied Schaaf's first motion for partial summary judgment to find that the instrument recorded by Grinder did not create a mechanic's lien on Schaaf's property, and granted Grinder's motion for partial summary judgment to declare that the instrument recorded by Grinder did create a valid mechanic's lien on Schaaf's property, on November 28, 2022[,] and in incorporating that finding into the trial court's judgment of June 4, 2024[,] and into the trial court's supplementary judgment of November 15, 2024[,] and determined in said judgments that Grinder is entitled to foreclosure on said lien."***

{¶9} Under the second assignment of error, Schaaf argues that the instrument filed by Grinder with the recorder's office purporting to create a statutory mechanic's lien did not contain a "notarial jurat" and did not constitute a true affidavit. Therefore, the instrument did not create a valid lien and Grinder was not entitled to a judgment of foreclosure.[1]

***Standard of Review***

{¶10} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of

---

1. In fact, two purported affidavits were filed with the recorder's office: An Affidavit for Mechanic's Lien O.R.C. §1311.06 on August 9, 2021, and an Amendment to Mechanic's Lien O.R.C. §1311.06 on September 10, 2021.

Case No. 2024-P-0081

evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Civ.R. 56(C).  "When reviewing a trial court's decision on summary judgment, appellate review is de novo, applying the same standards as the trial court."  *Schlegel v. Summit Cty.*, 2024-Ohio-5678, ¶ 16.

***Affidavit necessary to create mechanic's lien***

{¶11}  "Any person, or the person's agent, who wishes to avail self [sic] of sections 1311.01 to 1311.22 of the Revised Code [governing liens], shall make and file for record in the office of the county recorder in the counties in which the improved property is located, an affidavit showing the amount due over and above all legal setoffs, a description of the property to be charged with the lien, the name and address of the person to or for whom the labor or work was performed or material was furnished, the name of the owner, part owner, or lessee, if known, the name and address of the lien claimant, and the first and last dates that the lien claimant performed any labor or work or furnished any material to the improvement giving rise to the claimant's lien."  R.C. 1311.06(A).  "The affidavit may be verified before any person authorized to administer oaths, whether agent for the owner, part owner, lessee, lien claimant, or an interested or other party."  *Id.*

***Requirements for a valid affidavit***

{¶12}  "In Ohio, an affidavit is a 'written declaration [made] under oath,'" by a witness based on personal knowledge.  *In re Disqualification of Edwards*, 2024-Ohio-6173, ¶ 19, citing R.C. 2319.02.  "An affidavit must appear, on its face, to have been taken before the proper officer and in compliance with all legal requisites."  (Citation omitted.)  *State ex rel. White v. Franklin Cty. Bd. of Elections*, 2020-Ohio-524, ¶ 13.  "A notary public

… is authorized to … [a]dminister oaths or affirmations required or authorized by law." R.C. 147.51(A)(1).

{¶13} The "jurat" is distinct from the affidavit (the sworn written declaration) itself and may refer to the "notarial act," i.e., the administering of oaths and witnessing of the sworn statement, or the "certificate associated with executing affidavits." *In re Disqualification of O'Brien*, 2024-Ohio-6135, ¶ 5.

{¶14} The Revised Code provides that "[a] notary public shall provide a completed notarial certificate for every notarial act the notary public performs." R.C. 147.542(A). As defined by statute, the "jurat" means a "notarial act" where "(1) [t]he signer of the notarized document is required to give an oath or affirmation that the statement in the notarized document is true and correct; [and] (2) [t]he signer signs the notarized document in the presence of a notary public." R.C. 147.011(C). The "'[n]otarial certificate' means the part of, or attachment to, a document that is completed by the notary public and upon which the notary public places the notary public's signature and seal." R.C. 147.011(D). *Compare Stern v. Bd. of Elections of Cuyahoga Cty.*, 14 Ohio St.2d 175 (1968), paragraph one of the syllabus ("[a] jurat is not part of an affidavit, but is simply a certificate of the notary public who administered the oath, and is prima facie evidence that the affidavit was properly executed and sworn to before such notary public on the date stated in such affidavit").

{¶15} The jurat, understood both as the notarial act and as the certificate attesting the act, is necessary for a valid affidavit. The Ohio Supreme Court "'has rejected documents … lacking a notarial jurat or any other indication that the declarants had sworn to their statements or had made their statements under oath.'" (Citation omitted.) *O'Brien* at ¶ 8.

Case No. 2024-P-0081

***Jurat and acknowledgment distinguished***

{¶16}  An "[a]cknowledgment" is "a declaration by an individual before a notary public that the individual has signed a record for the purpose stated in the record."  R.C. 147.011(A).  When a notary takes an acknowledgment, the notary is certifying that "the person acknowledging appeared before the notary public and acknowledged executing the instrument."  R.C. 147.53(A).  "The 'key difference' between a jurat and an acknowledgment is that 'an acknowledgment is not made under oath.'"  (Citation omitted.) *In re Disqualification of Cook*, 2023-Ohio-4883, ¶ 10.

{¶17}  The difference between a jurat and an acknowledgment is reflected in the language of the notarial certificate.  R.C. 147.542(F)(2) ("[a] notarial certificate shall show … [t]he wording of the acknowledgment or jurat in question").  "A notary public shall not use an acknowledgment certificate with regard to a notarial act in which an oath or affirmation has been administered."  R.C. 147.542(D)(1).  Conversely, "[a] notary public shall not use a jurat certificate with regard to a notarial act in which an oath or affirmation has not been administered."  R.C. 147.542(D)(2).  "Unfortunately," the Ohio Supreme Court has observed, "it is not out of the ordinary for purportedly notarized documents to contain not a jurat but, rather, an acknowledgment."  *Cook* at ¶ 9.

***The mechanic's lien affidavits contain acknowledgments rather than jurats***

{¶18}  The mechanic's lien affidavits in the present case contain the following notarial certificate: "Before me, a notary public, in and for said County, personally appeared above named Timothy Grinder d/b/a Grinders Restoration who acknowledges that Timothy Grinder did sign the foregoing instrument and that the same is his free act."

{¶19}  At the time these instruments were executed, a jurat certificate was required to "state that an oath or affirmation was administered to the signer with regard to the

Case No. 2024-P-0081

notarial act." Former R.C. 147.542(C). In *Cook*, the Ohio Supreme Court considered a purported affidavit which contained a notarial certificate with language virtually identical to that of instruments in the present case.[2] The court found the purported affidavit invalid: "This language does not indicate that the notary administered an oath or affirmation" but, rather, "the certificate merely acknowledges that [the declarant] signed the document before him." *Cook* at ¶ 12. "Because the notarial certificate does not indicate that [the declarant's] purported affidavit … was sworn under oath, it is deficient and is not a jurat." *Id.*; *see also State v. Miller*, 2023-Ohio-3448, ¶ 29 (language in the notarial certificate that "'[t]he foregoing was acknowledged' … is insufficient to create 'sworn testimony'").

{¶20} The statements in *Cook* and *Miller* court are confirmed by changes to the notarial statutes effective April 3, 2025. The relevant statute now instructs a notary to employ the following language in the notarial certificate: "'[a]cknowledged before me,' or their substantial equivalent, when taking an acknowledgment;" or "'[s]worn to and subscribed before me,' 'affirmed to and subscribed before me,' or their substantial equivalent, when executing a jurat." R.C. 147.542(C)(3)(a) and (b). *Compare* R.C. 1311.06(C) ("[t]he affidavit [for mechanic's lien] may be in the following form … Sworn to before me and subscribed in my presence").

***The written declarations in the mechanic's lien affidavits satisfy the requirement that the statements be made "under oath"***

{¶21} The lower court relied on the language of the affidavits themselves, "Timothy Grinder … being first duly sworn, says that," to satisfy the necessity of a notarial jurat to the effect that the declarant has made his statement under oath. This proposition

---

2. *Cook* at ¶ 12: "**BEFORE ME**, a Notary Public in and for said State, personally appeared the above-named **KEVIN GLINSKY** who acknowledged that he did sign the foregoing instrument and that the same is his free act and deed."

Case No. 2024-P-0081

has been previously rejected by the Ohio Supreme Court. In *State ex rel. Evergreen Co. v. Bd. of Elections of Franklin Cty.*, 48 Ohio St.2d 29 (1976), the court ruled that an affidavit was insufficient where the certificate stated "[t]he foregoing instrument was acknowledged before me" despite language in the instrument itself that the declarant was "first duly sworn." *Id.* at 29-30.

{¶22} In 2022, the Ohio Supreme Court issued *State ex rel. Maras v. LaRose*, 2022-Ohio-3295, which reached a decision contrary to *Evergreen* without acknowledging or overruling the prior decision. The declarant in *Maras* "represented that she '[had] been duly sworn.'" *Id.* at ¶ 21. The notarial certificate, however, was in the form of an acknowledgement rather than a jurat. The court found that the document contained a "valid jurat." It observed, "[t]hat the notary administered the oath is evident … when the document is read in full." *Id.* at ¶ 20. To hold otherwise, "we would have to conclude that [the declarant] appeared before one notary to take the oath and then appeared before a second notary solely to attest that she signed the affidavit 'as [her] free act and deed.'" *Id.* at ¶ 21.

{¶23} Justice DeWine dissented in *Maras* on the grounds that there was no proper jurat, regardless of the declarant's statement that he had been "duly sworn." Rather, "affidavits must be made 'under oath,'" and "[t]he acknowledgement Maras filed give no indicia of a sworn oath." *Id.* at ¶ 33 (DeWine, J., dissenting). Accordingly, it was not an affidavit. *See also In re Disqualification of Pokorny*, 74 Ohio St.3d 1238 (1992) ("affiant failed to confirm his statement by oath or affirmation; therefore, it cannot be considered an affidavit"). By allowing the declarant rather than the notary to, in effect, affirm that his statement was made "under oath," Justice DeWine argued "the majority [was] grant[ing]

one litigant an exemption … at the expense of a predictable rule of law that applies equally to all." *Maras* at ¶ 34 (DeWine, J., dissenting).

{¶24} The issue is evidently the cause of some dissension among the justices of the supreme court. In his dissenting opinion in *Maras*, Justice DeWine argued that the court should "apply the same standard in this case that we have applied in other cases," *i.e.*, by "strictly enforc[ing]" the affidavit requirement. *Id.* at ¶ 31 (DeWine, J., dissenting). The arguably contrary opinions in both *Cook* and *Miller* cite to Justice DeWine's dissenting opinion in *Maras*. *Cook*, 2023-Ohio-4883, at ¶ 10; *Miller*, 2023-Ohio-3448, at ¶ 23. However, the opinion in *Cook* was the sole decision of the chief justice ruling on an affidavit of disqualification and the opinion in *Miller* was not a majority opinion (the lower court's judgment was affirmed as the six participating justices were evenly split). The supreme court has not revisited the issue since 2023, although it continues to arise in appellate decisions with various outcomes. *Compare 1900 Capital Trust II by US Bank Trust Natl. Assn. v. House-Redd*, 2025-Ohio-3274, ¶ 31, fn. 3 (8th Dist.) ("the notarial certificate on the Lost-Note Affidavit is merely an acknowledgement [despite the declaration to have been 'duly sworn'], not a jurat and, therefore, does not satisfy that requirement"), *with State v. Barron*, 2023-Ohio-1249, ¶ 23 (12th Dist.) ("[t]he omission of a jurat … is not fatal to the validity of the affidavit, so long as it appears either from the rest of the instrument or from evidence external to the instrument that the affidavit was, in fact, duly sworn to before an authorized officer") (citation omitted). Even with the clarifying changes to the notarial statutes noted above, an issue remains as to what effect the failure to comply with statutory requirements would have on the validity of the instrument.

Case No. 2024-P-0081

{¶25} It is well-established that, when there is an apparent conflict between supreme court decisions, "[t]he Court of Appeals is bound by the Supreme Court's last decision on the question." (Citation omitted.) *State v. Brill*, 2023-Ohio-404, ¶ 20 (3d Dist.); *Milkovich v. News-Herald*, 46 Ohio App.3d 20, 23 (11th Dist. 1989), *rev'd on other grounds sub nom. Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ("when there is a conflict between cases, the court of appeals is bound by the Supreme Court's last decision on the question involved, regardless of its previous decision"). Pursuant to the supreme court's decision in *Maras*, the affidavits submitted by Grinder created a valid mechanic's lien.

{¶26} The second assignment of error is without merit.

***"First assignment of error: The trial court committed error when it granted judgment in favor of Plaintiff-Appellee, Timothy Grinder, hereinafter 'Grinder', and against Defendant-Appellant Marcella Schaaf, hereinafter 'Schaaf', on Grinder's claim for $99,764.70 for home repair work and on Schaaf's counterclaim for return of $10,000.00 paid for home repair work, in the trial court's judgment entered June 4, 2024."***

{¶27} Under the first assignment of error, Schaaf argues that, based on the magistrate's own findings, Grinder violated Ohio's Home Solicitation Sales Act (HSSA) and, therefore, is precluded from obtaining a judgment against her for the purported home repair work. Specifically, Schaaf argues that Grinder's failure to produce a signed contract, or any contract containing notice of the right of rescission, violates the Act. See Magistrate's Decision at 46-47 and 50-52. Grinder counters that Schaaf failed to demonstrate that the HSSA applies in the circumstances of this case.

***Standard of Review***

{¶28} "When reviewing an appeal from a trial court's adoption of a magistrate's decision, an appellate court must determine whether the trial court abused its discretion

in adopting the decision." (Citation omitted.) *Mapleview Operating Co. v. Valletto*, 2025-Ohio-1898, ¶ 15 (11th Dist.); *J&S Motors, L.L.C. v. Hendking*, 2025-Ohio-2925, ¶ 17 (11th Dist.) ("we review a trial court's adoption of a magistrate's decision for an abuse of discretion").

***The Home Solicitation Sales Act***

{¶29} The Ohio Supreme Court has described the HSSA as follows:

> The Home Solicitation Sale[s] Act appears in R.C. 1345.21 through 1345.28. These statutes, inter alia, (1) provide to the buyer of consumer goods and services covered by the Act, the absolute right to cancel the sale until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase (R.C. 1345.22); (2) require every home solicitation sale to be evidenced by a written agreement or offer to purchase, signed by the buyer, which written agreement must provide thereon notice of the right of cancellation (R.C. 1345.23); and (3) provide that failure to comply with the provisions of R.C. 1345.21 to 1345.27 constitutes a deceptive act or practice in connection with a consumer transaction in violation of R.C. 1345.02, making applicable the remedies available to the Attorney General as enumerated in R.C. 1345.07 (R.C. 1345.28).

*Brown v. Martinelli*, 66 Ohio St.2d 45, 46 (1981).

***The applicability of the Home Solicitation Sales Act***

{¶30} "'Home solicitation sale' means a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business." R.C. 1345.21(A). The HSSA does not apply when: "The buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a

Case No. 2024-P-0081

fixed location in this state where the goods or services involved in the transaction are regularly offered or exhibited for sale." R.C. 1345.21(A)(4).

{¶31} Although the lower court made no explicit finding regarding the applicability of the HSSA, the evidence before this court demonstrates that the underlying contract was a "home solicitation sale." Schaaf initiated contact with Grinder on the advice of her son who was personally acquainted with Grinder and the contract was negotiated at Schaaf's residence (not at the property which was the subject of the contract). *Smith v. Sack*, 2016-Ohio-763, ¶ 23 (11th Dist.), citing *Kamposek v. Johnson*, 2005-Ohio-344, ¶ 17 (11th Dist.) ("home improvement contracts generally fall within the purview of the HSSA").

{¶32} Contrary to the arguments advanced by Grinder, the fact that Schaaf did not reside at the subject property does not preclude application of the HSSA. *White v. Allstate Ins. Co.*, 2008-Ohio-140, ¶ 27 (8th Dist.) ("[t]he use of the term 'a' rather than 'the' supports a finding that the intention of HSSA was to afford protection for more than one residence of the buyer, such as vacation homes and the like"). Nor does the fact that Schaaf initiated contact with Grinder preclude application in the absence of evidence that Grinder maintains a fixed location where home improvement goods or services are regularly offered or exhibited for sale. *Kamposek* at ¶ 19 ("there was no evidence that the Johnsons had a business establishment," and, therefore, "the exclusion provided in R.C. 1345.21(A)(4) does not remove the instant transaction from the HSSA").

***The failure to cancel and/or rescind the contract precludes judgment in Schaaf's favor***

{¶33} The provisions of the HSSA are not self-executing. The fact that the contract at issue does not comply with requirements of the HSSA does not *ipso facto*

Case No. 2024-P-0081

preclude Grinder from obtaining a judgment or entitle Schaaf to a refund of the money paid.

{¶34} "Every home solicitation sale shall be evidenced by a written agreement" signed by the buyer and contain a statutorily prescribed statement advising the buyer that he or she "'may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction.'" R.C. 1345.23(A) and (B)(1). "Until the seller has complied with divisions (A) and (B) of this section the buyer may cancel the home solicitation sale by delivering to the seller by certified mail, return receipt requested, personal or manual delivery, facsimile transmission, or electronic mail, written notice to the seller of the buyer's intention to cancel." R.C. 1345.23(C). "If the notice is not provided, the buyer's right to cancel the parties' agreement continues until he or she is provided the requisite notice in accordance with the statute." *Santos v. Buckeye 5, LLC*, 2023-Ohio-3602, ¶ 39 (7th Dist.); *Smith*, 2016-Ohio-763, at ¶ 23 (11th Dist.) ("[i]f the agreement does not include notice of the buyer's right to cancel, the buyer's right to cancel does not expire").

{¶35} "Cancellation is evidenced by the buyer giving written notice of cancellation to the seller at the seller's address, electronic mail address, or facsimile number stated in the agreement or offer to purchase." R.C. 1345.22(A). "In connection with any home solicitation sale, no seller shall … [f]ail or refuse to honor any valid notice of cancellation by a buyer and within ten business days after receipt of such notice to," *inter alia*, "[r]efund all payments made under the contract or sale." R.C. 1345.23(D)(4). We emphasize that, under the HSSA, a home solicitation sale agreement is not invalid if it fails to conform to the statutory requirements but, rather, is subject to cancellation by the buyer upon the provision of valid notice. Unless the cancellation notice required by R.C. 1345.23(B)(1)

Case No. 2024-P-0081

is provided, the buyer may cancel the agreement at any time.  However, the buyer is not entitled to the remedies under the HSSA until the agreement has been cancelled in the manner prescribed by R.C. 1345.22(A).  *Lunar Lagoons LLC v. Stephens*, 2025-Ohio-2389, ¶ 42 (3d Dist.) ("*[i]f the buyer decides to cancel the sale pursuant to the statutory guidelines*, the seller must refund all payments made under the contract to the buyer and/or cancel any indebtedness arising on the buyer's part under the terms of the transaction") (emphasis added); *Santos* at ¶ 42 ("if a seller fails to provide the buyer with the notice to cancel, *and the buyer later elects to cancel*, the seller is required to honor the right to cancel") (emphasis added); *Griffin Contracting and Restoration v. McIntyre*, 2018-Ohio-3121, ¶ 26 (12th Dist.) ("*[u]pon the buyer exercising the right to cancel*, the seller must refund all payments made under the contract to the buyer") (emphasis added).

{¶36}  In the present case, "valid notice of cancellation" was never given by Schaaf.  This fact distinguishes the present case from this court's decisions in *Smith* and *Kamposek* relied upon by Schaaf.  *See Smith*, 2016-Ohio-763, at ¶ 11 (11th Dist.) ("[t]he court found that … Mr. Smith cancelled the contracts"); *Kamposek*, 2005-Ohio-344, at ¶ 5 (11th Dist.) ("[o]n April 9, 2003, the Kamposeks sent a letter to Vickie Johnson cancelling the contract").  Therefore, she is not entitled to avail herself of the remedies under the HSSA.

{¶37}  The first assignment of error is without merit.

***"Third assignment of error: The trial court committed error when it entered a judgment on June 4, 2024, which "adopts, in whole, the Magistrate's Decision without modification."  The referenced Magistrate's Decision had been entered the same day, June 4, 2024.  The Magistrate's Decision contained findings of fact that the contractor had committed acts that were "deceptive sales practices" which precluded the money judgments in favor of the contractor which were granted in the Magistrate's Decision, as set out in the First Assignment of Error.  Error was committed by not applying the findings of fact to the conclusions of law, and by not permitting the fourteen-day time for a party to file objections to the Magistrate's***

Case No. 2024-P-0081

*Decision, as provided by Civil Rule 53(D), and including in said judgment the sentence "No just reason for delay." which initiated the period of time within which a Notice of Appeal must be filed, without the opportunity for a party to file objections to the Magistrate's Decision."*

{¶38} To the extent that Schaaf is complaining that the trial court adopted the Magistrate's Decision without allowing her the fourteen days mandated by rule for filing objections, we find no error. The Civil Rules expressly allow the court to adopt a magistrate's decision during the fourteen-day period for filing objections provided that the magistrate's decision is stayed until the court disposes of timely filed objections. Civ.R. 53(D)(4)(e)(i). Schaaf does not claim that any execution of judgment occurred while her objections to the Magistrate's Decision were pending.

{¶39} To the extent that Schaaf is reasserting arguments made under the first assignment of error, they are without merit for the reasons stated under that assignment of error.

{¶40} The third assignment of error is without merit.

*"Fourth assignment of error: The trial court committed error when it entered its order of July 31, 2024, which overruled Schaaf's Objections to Magistrate's Decision filed June 17, 2024, on grounds relating to the availability of the transcript, without addressing the objections specifically made to Conclusions of Law, which objections relied on specific Findings of Fact made by the Magistrate which findings were not disputed and therefore did not require the consideration of a transcript or other evidence."*

{¶41} We recognize that the trial court failed to expressly rule on Schaaf's arguments regarding the applicability of the HSSA to the underlying transaction. Because, as acknowledged by Schaaf, her objections relied on the magistrate's undisputed factual findings, the court's failure did not prejudice Schaaf's ability to raise claims on appeal or this court's ability to consider the merits of her claims.

{¶42} The fourth assignment of error is without merit.

Case No. 2024-P-0081

*"Fifth assignment of error: The trial court committed error when it included in its Supplemental Final Judgment Entry of November 15, 2024, a finding that Grinder is entitled to attorney fees, both for fees which may be awarded by a court by statute to a prevailing party in a case based upon a mechanic's lien, and as sanctions pursuant to three provisions, R.C. 2323.51, Civil Rule 11, and Portage County Local Rule 7.9, and also under "common law", without any evidence having been submitted to the trial court of any actions which might have been a basis for such sanctions, and with the determination of which party is "prevailing" on the issue of the validity of the proposed mechanic's lien presently before this Court of Appeals."*

{¶43} As yet, there has been no determination of what attorney fees, if any, Grinder may be awarded.  Accordingly, consideration of such an award is premature.

{¶44} The fifth assignment of error is without merit.

{¶45} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.  Costs to be taxed against the appellant.


MATT LYNCH, P.J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2024-P-0081

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the judgment of the Portage County Court of Common Pleas is affirmed.

Costs to be taxed against the appellant.

_____
JUDGE SCOTT LYNCH


_____
PRESIDING JUDGE MATT LYNCH,
concurs


_____
JUDGE JOHN J. EKLUND,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-P-0081